NOVEMBER 12, 1801.

# Joseph Beckley *v.* Bryan and Ransdale.

*Upon an appeal from a decree of the Lexington District Court.*

1. As the law requires every official surveyor to see the survey plainly marked by trees or natural boundaries, the presumption is, that every survey has been thus marked, or bounded, when made, though the abuttals may not now be found.

2. Should a surveyor omit to mark the abuttals of a survey, such omission would not be allowed to prejudice the owner of the survey, whenever it could be supplied by any rational device.

3. The beginning corner in a plat and survey is of no higher dignity or greater importance than any other of the corners.

4. Where one or more of the corners of a survey are lost, they must be ascertained by running the courses and distances called for in the survey, from the remaining corners.

5. Where a departure from either course or distance becomes necessary, in order to close the survey, distances must yield, as being the more uncertain.

6. Where a portion of the lines and corners of a survey is lost, and the survey can not be closed by lengthening or shortening the distances, then, and not otherwise, there may be a deviation from the course.

The principal question arising in this cause is, in what manner ought the situations of the corners of a survey which have been

lost to be ascertained, when one or more of its other corners can be shown? This is indeed a question of great difficulty, and the decision of it will probably be of equal consequence to multitudes.

It is proper to premise, that there is but one species of cases in which any court of justice is authorized by our land law to divest the owner of a survey of the surplus included within its boundaries, namely: where the survey was made posterior to an entry made by another person on the same land; and to do more would be unequal and unjust, inasmuch as a survey which is too small can not be enlarged. But the present contest is not founded on a case of this kind.

It ought also to be premised, that from the year 1748 until the present day, the law has required every surveyor of land, at the time of making a survey, to see the same bounded plainly by marked trees or natural boundaries. Therefore, the legal presumption is, that all the lines and corners of every survey were thus marked or bounded when it was made, and that those of them which can not be found have by some means been removed or defaced. And if, in any instance, the presumption could be destroyed by undoubted testimony, yet, as the omission was the fault of an officer of the government, and not of the owner, it would be unjust that the claim should be injured thereby, when the omission can be supplied by any rational device. From this view of such cases, it appears that the object to be accomplished is to determine where such lost lines and corners had been marked, or would have been marked, had the surveys been closed.

And it is proper further to premise, that this court can not discover from the land law, or from the nature of the case, that the corner of a survey which is made the beginning in the plat and certificate of survey, is of any higher dignity, or of greater importance in any point of view than one of the other corners; nor in this respect that the surveyor was subjected to the direction of the owner; but it rather seems that the surveyor was, and ought to have been, left at discretion to fix on that corner of a survey for a beginning which might afterward be the most easily found, or which could be described with the greatest certainty, without consulting the owner, or giving a preference to the beginning called for in his entry, when survey was founded on an entry. And for similar reasons, it seems that it was also at the discretion of the surveyor, when he was inserting the other corners in the plat and certifi-

Beckley *v.* Bryan and Ransdale.

cate, to proceed either to the right hand or to the left from the corner he chose to name first.

It is equally necessary to premise, that the variation of the magnetic needle from the true meridian, which is different at different times, and at all times hard to be ascertained with accuracy—the inadvertant deviations of surveyors from the courses they meant to pursue—the carelessness and the involuntary mistakes of chain carriers, and the greater unevenness of the ground whereon one line of a survey is run than that of another, for which it is nearly impossible to make an accurate allowance, are the principal sources of the difficulties arising on this question, for the removal of which our land law contains no provision, only as to that arising from the variations of the magnetic needle, which, it is believed, has not generally been carried into effect with any reasonable degree of precision.   Be this as it may, from this provision it is clear that the legislature considered the courses specified in a plat and certificate of survey as the principal guide to recover lost lines and corners.   To confirm this position, it might be observed that for any other purpose the provision is wholly unnecessary.   If the lines and corners of all survey could be shown, the true meridian and the variations of the magnetic needle from it would be of no importance in adjusting claims to land. Considerable aid may also be derived from the distances called for in plats and certificates of survey, yet, when a departure from either course or distance becomes necessary, reason as well as law seems to suggest that the distances, taken in our mode of mensuration, ought to yield, as being much the most uncertain of the two.   Indeed, it never has been held, that in laying off vacant land purchased from government, that a line established by a surveyor can be altered on account of its being longer or shorter than the distance specified in the plat and certificate he has returned.

These considerations seem to dictate an answer to the question which has been stated, to-wit:   From one of the adjacent corners which remain, the courses and distances of the lost lines ought to be run, as called for in the plat and certificate of survey, and if they close with the other adjacent corner which remains, the true situations of the lost corners, and consequently the true situations of the lost lines, will be satisfactorily ascertained.   But if the courses and distances thus run do not close the survey, it must be accomplished by running the same courses, and either lengthening or shortening the distances, as each case may require, and in pro-

portion to the length of each line, as called for in the plat and certificate of each survey. And if the survey can not be made to close by this means, then, and not otherwise, a deviation from the courses called for must also aid in accomplishing the purpose. For examples, where all the corners of a survey are lost but one, lost corners ought to be ascertained by running conformably to both the courses and distances specified in the plat and certificate of survey. Where there is but one corner of a survey lost, the courses called for in the plat and certificate of survey ought only to be regarded; and nothing more is necessary than to extend those courses from the adjacent corners which remain, until they intersect each other, and the place of intersection will be the situation of the corner to be ascertained. But when two or more corners are missing, and running the courses and distances called for in the plat and certificate of survey will not close, then the length of each line can only be determined by calculation.

It may be supposed that where two corners of a survey are lost which has only four corners, and the distance between the remaining two corners is greater or less than the distance called for in the plat and certificate of survey, that the three lost lines should be extended on their respective courses so as to bear a just proportion to the remaining line, which would indeed be in conformity to the general rule just prescribed; at least, the same effect would be produced as if the rule had been literally applied. But it is conceived by the court that the remaining line, being either longer or shorter than is expressed in the plat and certificate of survey, ought to be presumed to have happened by a mistake, which could necessarily have affected only the length of the opposite line; therefore, the presumption can not be carried further in violation of the lengths of the other two lost lines than as specified in the plat and certificate of survey, and, therefore, that every such case must be an exception to the rule; that is to say, the two lost lines which are to be run from the remaining corners ought to be extended on the courses and to the distances called for in the plat and certificate of survey, making a proper allowance on each line for the unevenness of the ground over which it passes, and also to preserve the course of the other lost line, as called for in the same. The propriety of the exception will be further evinced by considering that the general rule arises principally from the necessity of the cases to which it is applied; but in the cases to which the exception is applied the necessity does not exist; and surely

Beckley *v.* Bryan and Ransdale.

nothing but necessity will justify a departure either from course or distance.

It will, however, be understood that in all cases where lost corners and lines are to be renewed, due allowances must be made for the variation of the magnetic needle from the true meridian. Where it shall be found that the direction of the land law, in this respect, was accurately complied with at making the survey, a legal standard is fixed. But where it was wholly omitted, or carelessly done, the defect may be rationally supplied by ascertaining from other lines of that or the neighboring surveys what was the difference of the variation, at or about the time the lost lines were made, from the variation at the time being.

On this question it need only be further observed, that the case on which this appeal was obtained falls under the exception which has been stated, and ought to be decided accordingly, and, consequently, that the decree of the district court, having been founded on principles repugnant to both general rule and the exception, is erroneous. It seems to this court that the decree is not only exceptionable, in directing the appellant's survey to be closed by a line very different, both in course and distance, from what is specified in his plat and certificate of survey, but should the decree be affirmed, it would put in jeopardy every entry and survey made to adjoin lines which have been or hereafter may be lost.

It has been urged by the counsel for the appellees, that they have obtained the eldest grant for the land in contest, and, therefore, that they ought not to be compelled to convey it to the appellant, who, besides, holds a greater quantity of land by his survey than in equity he ought to enjoy. This objection is virtually answered in the preceding considerations; to which might be added, that equity can never prevail against law'; nor can a grant extinguish a prior legal title. But if any doubt remained on the point, when taken in a general view, it is effectually removed from the present cause by a special act of assembly: it appearing that the appellant claims under one of those surveys which, at the May session, 1779, the legislature declared to be good and valid, and also that the claim of the appellees to any part of it originated since that time.

Wherefore, it is decreed and ordered, that the said decree of the district court held at the town of Lexington be reversed, and that the appellees pay unto the appellant his costs expended in the prosecution of this appeal. And it is further decreed and ordered,

that the cause be remanded to the said district court that it may cause to be ascertained the metes, bounds and quantity of so much of the said Bryan's settlement survey as shall be found to lie within the said Beckley's military survey when the situations of its lost corners are fixed, and its lost lines are run conformably to the exception contained in the foregoing opinion, and enter up a decree for the same in favor of Beckley, and that it make such further decrees and orders in the cause as law and equity may require. As to ascertaining Beckley's lost corners and lines, the meaning of the court is, from his north-westwardly corner an elm, buckeye and ash, extend a line south twenty degrees west four hundred and sixty poles. From his eastwardly corner, a white walnut and hoopwood, extend a line southwest with a line, styled in his grant William Preston's, five hundred poles. The extremities of those two extended lines will be the lost corners; and then connect those corners with a line running parallel to the line which connects the two first mentioned corners, and the survey will be closed; which opinion and decree aforesaid is ordered to be certified to the said district court.