JOHN BUCKMASTER v. GUSTAVUS H. MOWER AND SAMUEL FORD.

B. and F. entered into a contract in writing, by which it was agreed, that B. would deliver to F., at his factory, from time to time as might be required in order to keep the factory in operation, a specified quantity of wool; that F. would manufacture the wool into cassimers, and deliver the cassimers, so manufactured, to B., at the factory, from time to time, as they should be finished and ready for market; that B. should send the cassimers to market, and have them sold, and pay to F., for manufacturing, the balance of money obtained for them, after deducting forty four cents for every pound of wool so delivered by B., and the interest and cost of freight; that B. should pay to F. one third of the money received in advance for the cassimers, for the purpose of defraying the expense of manufacturing; that B., before sending the cassimers to market, might take one ninth of the number of yards at ninety cents per yard; and that F. would also manufacture for B. another lot of wool, of about five thousand pounds, upon receiving notice within two weeks that B. so desired. And it was held, that the property in the cloth was in B., and that he had the right to the possession of it, as fast as it was manufactured, and that he might sustain trover against F. and one to whom F. had sold a portion of the cloth, to recover for the cloth so sold,

And it not having been proved, in an action of trover so brought, that F. had performed his contract as to the residue of the wool, or that B.'s lien upon the cloth sued for was limited to the value of the wool from which the cloth was made, it was held, that B. was entitled to recover the full value of the cloth at the time of the conversion, and that the remedy of F., for manufacturing such cloth, if any thing really belonged to him, was by action upon the contract. BENNETT, J., dissenting.

A wrongful sale of property by a bailee is a conversion in both the seller and purchaser, for which the bailor may maintain trover against both.

TROVER for five cases of cassimers. Plea, the general issue, and trial by the jury, September Term, 1845,—WILLIAMS, Ch. J., presiding.

On trial the plaintiff gave in evidence a contract in writing, executed by the plaintiff and the defendant Ford, dated September 23, 1841, by which it was agreed, that the plaintiff would deliver to Ford, at his factory in Bridgewater, from time to time as might be required in order to keep the factory in operation, a specified quantity of wool; that Ford would manufacture the wool into cassimers as soon as possible after manufacturing wool then on hand, and de-

Buckmaster *v.* Mower et al.

liver all the cassimers, so manufactured, to the plaintiff, at the factory, from time to time, as they should be finished and ready for market; that the plaintiff would send the cassimers to market, and have them sold at any time within twelve months after the delivery of the wool, at the option and direction of Ford, and pay to Ford, for manufacturing, the balance of money obtained for them, after deducting forty four cents for every pound of wool, so delivered by the plaintiff, and the interest and cost of freight; that the plaintiff should pay to Ford one third of the money received from the consignees in advance for the cassimers, for the purpose of defraying the expense of manufacturing; that the plaintiff, before sending the cassimers to market, might take one ninth of the whole number of yards at ninety cents per yard; and that Ford would also manufacture for the plaintiff another lot of wool, then owned by certain other persons, amounting to about five thousand pounds, upon receiving notice within two weeks that the plaintiff so desired.

The plaintiff also gave evidence tending to prove, that he delivered the wool, agreeably to the contract, and that five cases of the cloth manufactured therefrom were taken, by direction of Ford, from the factory in Bridgewater to Woodstock, and were there sold by Ford to the defendant Mower; that Mower was informed, previous to the sale, that the cloth was manufactured from the plaintiff's wool and belonged to the plaintiff; and that the plaintiff afterwards, and before the commencement of this suit, demanded the cloth of Mower, at Mower's store in Woodstock, and Mower refused to surrender it, saying that he had some cloth of Ford, which he had sent to Boston, and that he had received it from Ford as his, Mower's, own goods.

The defendants requested the court to charge the jury, that the evidence so given did not entitle the plaintiff to recover in this action against the defendants. But the court instructed the jury, that, if they found, that the cloth was manufactured from the wool so delivered by the plaintiff to Ford, and that Mower was informed, previous to the sale, that the cloth was manufactured from Buckmaster's wool, the plaintiff was entitled to recover in this suit, of both the defendants, the value of the cloth so sold, and the interest.

Verdict for plaintiff. Exceptions by defendants.

Buckmaster *v.* Mower et al.

*Foot & Hodges* and *R. Pierpoint* for defendants.

To sustain trover the plaintiff must have the right of possession, or property, in the specific goods sued for. It will not lie, where the defendant may redeem himself by the tender, or payment, of a certain sum of money, but only where he could do so by a tender, or return, of the identical property. *Orton* v. *Butler*, 5 B. & Ald. 652, [7 E. C. L. 224.] *Sewall* v. *Lancaster Bank*, 17 S. & R. 285. 2 Saund. R. 47, *Gordon* v. *Harper*, 7 T. R. 9. *Smith* v. *Plomer*, 15 East 607. 3 Pick. 258. 9 Ib. 156. 22 Pick. 535. 4 B. & C. 922. In this case it is insisted, that, under the contract, Ford might at any time have paid or tendered to the plaintiff money for the wool delivered, at the rate of forty four cents per pound, and that such payment, or tender, would have vested the property in the cloth in Ford. If so, the plaintiff cannot sustain trover. The wool was to be manufactured into cassimers by Ford and delivered to the plaintiff at the factory, not for the plaintiffs's use and as his sole property, but for the purpose of sending them to market, to be sold for the joint benefit of both. Neither was to have an exclusive property in the cloth, or any portion of it, but each was to have an interest in every yard of it. Both were dependent upon the sale of the cloth for indemnity and compensation. The fabric was produced by the joint funds, or, what is the same thing, by the union of the raw material of the one and of the labor &c. of the other ;—and being thus a case of joint tenancy, or tenancy in common, in the cloth, this action cannot be sustained. *Hurd* v. *Darling*, 14 Vt. 214. *Tubbs* v. *Richardson*, 6 Vt. 442. *Sanborn* v. *Morrill*, 15 Vt. 700. *Mersereau* v. *Norton*, 15 Johns. 179. *Pettengill* v. *Bartlett*, 4 N. H. 87. Ford had more than a simple lien upon the cloth ; he had a special property, which would authorize him to sell the cloth in order to repay himself for his labor. *Cazenove* v. *Prevost*, 5 B. & Ald. 70, [7 E. C. L. 27.]

This verdict cannot stand against the defendants jointly, inasmuch as no joint conversion was proved. *Nicoll* v. *Glennier*, 1 M. & S. 588. *White* v. *Demary*, 2 N. H. 546. *Lockwood* v. *Bull*, 1 Cow. 329. *Mitchell* v. *Williams*, 4 Hill 13. *Atkin* v. *Slater*, 1 C. & K. [47 E. C. L.] 355.

There is error, in allowing the plaintiff to recover the value of the cloth sold and the interest. *Chamberlin* v. *Shaw*, 18 Pick. 278,

*Pierce* v. *Schenck,* 3 Hill 28. *Vickery* v. *Taft,* 1 D. Ch. 241. *Smith* v. *Clark,* 21 Wend. 83. The rule of damages is the actual damage sustained by the plaintiff, which, in this case, is the amount of wool in the five cases of cassimers, at forty four cents per pound, and interest. Beyond this he takes the avails of labor, materials, &c., of Ford. *Hunt* v. *Haskell,* 24 Maine 339.

*E. Edgerton* and *C. Linsley* for plaintiff.

The delivery of the wool by the plaintiff to Ford was a mere bailment. One species of bailment is termed, *Locatio operis faciendi,* or letting out work and labor to be done, or care and attention to be bestowed, by the bailee, upon the goods bailed, for a recompense. 2 Kent 559, 586. The wool was to be delivered to Ford, for the purpose of being manufactured by him, for a recompense to be made to him, with an express stipulation, that the cloth, when manufactured, should be restored to the plaintiff.

At the time of the sale to Mower the manufacture of the goods had been completed, and the contract gave to the plaintiff the right to determine the bailment and resume possession of the property. The transaction did not vest in Ford any right of property. The wool, previous to its manufacture, and the cloth, afterwards, remained the property of the plaintiff. He did not *sell* the wool, but merely delivered it, for the purpose of being manufactured. *Wish* v. *Small,* 1 Camp. 331, n. *Seymour* v. *Brown,* 19 Johns. 43. 2 Denio 628. Ford waived any right of lien, which he might have had, by the express stipulation for the restoration of the property to the plaintiff, and for a payment afterwards for manufacturing. Nor does the fact, that the contract contains a modification of the owner's general right of sale, give any other character to the transaction, than that of a bailment. Ford's sole duty was to manufacture; and his sole right was, to receive payment from the plaintiff for manufacturing. The sale to Mower was therefore a conversion, for which Ford was liable. *Vickery* v. *Taft,* 1 D. Ch. 241. *Batchelder* v. *Warren,* 19 Vt. 377. And the purchaser was equally liable. *Grant* v. *King,* 14 Vt. 367.

If the plaintiff were sole owner of the property, the true measure of the damages is the entire value of the property.

The opinion of the court was delivered by

HALL, J. The first and principal question in the case is, whether the plaintiff had such a property in the goods, as to entitle him to sustain the action. This depends upon the construction of the written contract entered into between the plaintiff and Ford for the manufacture of the cloth. It is insisted on the part of the defendants, that the contract is evidence, either of a sale of the wool by the plaintiff to Ford, or of a joint ownership in the plaintiff and Ford of the cloth, after its manufacture; and that, in either view of the case, trover will not lie. On the other hand it is contended, on the part of the plaintiff, that both the wool and the cloth continued the property of the plaintiff, until the time of the conversion.

These controverted points are to be determined by the intention of the parties, as manifested by the terms of their contract. The contract commences as follows, viz., " This agreement, made by and between John Buckmaster of, &c., party of the first part, and Samuel Ford of, &c., party of the second part, witnesseth, that the said John Buckmaster agrees to furnish and to deliver to the said Samuel Ford, at his factory in Bridgewater, in the county of Windsor, about twelve thousand pounds of wool, which the said John has now on hand,—said wool to be delivered from time to time at the said factory, on demand, in sufficient quantity to keep the said factory in full operation, until the whole of said wool shall be delivered; and the said Samuel Ford agrees to manufacture said wool into cassimers as soon as possible, after manufacturing wool that is now on hand, and the said Samuel doth farther agree to deliver all the cassimers, manufactured from the wool aforesaid, to the said John, at the said factory, from time to time, when finished and ready for market."

If the contract had stopped here, I apprehend there could be no reasonable doubt of its construction. It is thus far a contract by Ford to receive from Buckmaster a quantity of his wool, to manufacture into cloth, and to deliver the cloth to him at the factory, as fast as manufactured. It is true, the word *deliver*, from the connection in which it may be used, or from the subject matter of the contract, in which it is found, is sometimes *construed* as equivalent to the word *pay*. It is evident, however, that no such import can be given to the word deliver, in reference to the cloth in this contract, because there was no indebtedness to Buckmaster, upon which a

payment could possibly be applied. The delivery here must be a return of the cloth, and not a payment of it. The wool being the property of Buckmaster, the cloth, into which it was made, would continue his, and he would be liable to Ford for the value of his labor bestowed in the manufacturing. This is the common principle applicable to bailments of this description, recognized by all the authorities cited in the argument on both sides. The property in the manufactured article may doubtless be changed by contract; but in the absence of such contract it remains in the bailor.

The contract, in this case, if it had stopped with the part that has been above copied, would, however, have been imperfect in one particular. No price for the manufacture would have been agreed upon. But Ford would doubtless have had a right of action against Buckmaster, for what his services in the manufacture would have been reasonably worth.

We think the residue of the contract, consistently with the part above copied, may be fairly and most naturally construed, as specifying a mode of determining the price, that is to be paid to Ford for the manufacturing. In order to ascertain the price, Buckmaster is to take the cloth to the Boston market, and, after deducting freight, and forty four cents per pound as the value of his wool, from the price which the cloth is sold for, the residue is to go to Ford for his services. Although this gives Ford no property in the cloth, yet it makes him the principal party in interest in the sales, as the amount of his compensation depends on the price, which shall be obtained by Buckmaster ;—and hence the provision in the contract, giving Ford a voice in determining the time and manner of the sales in the Boston market, which are, however, to be made for Buckmaster, and not for Ford. The fact, that Buckmaster is to pay Ford one third of the advances he shall receive on the cloth from the commission merchant, towards defraying the expenses of manufacturing, is consistent with this view of the contract; as is also the provision, that Buckmaster may take from the cloth, before sending it to market, one ninth of the number of yards manufactured, at ninety cents per yard,—it being equivalent to an agreement by Buckmaster to pay Ford forty six cents per yard for the manufacturing. These provisions are also introduced into the contract for the declared purpose of determining the price to be paid Ford for the manufac-

27

turing;—the language of the contract succeeding that above copied, and introductory to these provisions, being, "and the said Buckmaster is to take said cassimers to Boston market and have them sold, and *is to pay over to said Samuel, for manufacturing the same,* the balance of money obtained" by the sales, &c.

· That it was understood by the parties, that Ford was to manufacture the wool into cloth for Buckmaster, and not for himself and Buckmaster jointly, is farther indicated by the concluding part of the contract, which provides, that Ford shall, on notice thereafter being given, "manufacture for the said Buckmaster, as aforesaid," about five thousand pounds of other wool. I do not perceive, how this contract can receive any other construction, than that which we have given it; and under this view of it we must hold, that the property in the cloth was in the plaintiff, and that he had the right to the possession, as fast as it was manufactured.

Although Ford had no property in the cloth, either as tenant in common, or otherwise, he had doubtless an interest in its preservation. And it may be conceded, that, if the cloth, on its way to market, or after its arrival there, had been destroyed by fire, or flood, without the fault of Buckmaster, Ford would have lost his compensation for its manufacture;—not because he had any property in it, but because his pay for the manufacture was to depend upon the sale of it in market. Until such sale, or some default in Buckmaster in not making it, he could claim no compensation. But the property and right of possession *being* in Buckmaster, the cloth could not have been lawfully attached, as belonging to Ford; though any sum, reasonably due to Ford from Buckmaster for the manufacture, might doubtless have been reached by the trustee process.

It is insisted, in behalf of the defendants, that the evidence did not show a joint conversion of the property by the two defendants, and that therefore the judgment below was erroneous. There is no doubt, that proof of a joint conversion was necessary to justify a recovery against both defendants. But we think a joint conversion was shown. The case of *Grant* v. *King*, 14 Vt. 367, is directly to the point, that a wrongful sale of property by a bailee is a conversion in both the *seller* and *purchaser,* for which the bailor may maintain trover against both. The plaintiff might probably have

treated the removal of the cloth from the factory at Bridgewater as a conversion by Ford, or he might have waived his action against Ford, and gone against the other defendant for a conversion of the cloth in his subsequent sale of it in Boston.   But it was at the election of the plaintiff, to choose which of the wrongful acts of the defendants he would consider a conversion of his property; and it is not for the defendants to say, that he should only claim against them for such of their separate wrongful acts, as would have enabled them to defeat his action.

It is also claimed by the defendants, that the rule of damages adopted in this case, which was the value of the cloth, was erroneous,—that the recovery should only have been for the value of the plaintiff's wool, from which the cloth was made.   Upon this question some members of the court have entertained considerable doubt, and it is one on which we are perhaps now not entirely agreed. Although the general rate of damages in trover is the value of the property at the time of the conversion, yet there are cases, where it appeared the plaintiff would be fully indemnified by a less sum, in which deductions from that value have been made.  Such are *Vickery* v. *Taft*, 1 D. Ch. 241, and *Chamberlin* v. *Shaw*, 18 Pick. 278. In each of those cases it distinctly appeared, that if the plaintiff should recover the full value of the property, the defendants would have an immediate right of action against the plaintiff, on contract, for a portion of that value; and to save the necessity of a cross action the damages were allowed to be reduced.   I do not think this case is shown to be one of that character.  If it appeared, that the cloth sued for was all that was manufactured from the wool delivered by the plaintiff under the contract, there might, perhaps, be ground for claiming, that the plaintiff would be indemnified by a recovery for the value of the wool, of which the cloth was made.    In such case the plaintiff would recover the value of all his wool.   But the cloth, which is the subject of the present suit, is the produce of but a portion of the plaintiff's wool, and whether a recovery in this case for the value of the wool, of which the cloth converted was made, would indemnify the plaintiff depends upon the question, whether Ford has performed his contract in regard to the residue of the wool.  In order to have the damages reduced below the value of the cloth, the defendants should have shown, that the plaintiff's

lien was less than that value,—in other words, that the extent of the plaintiff's lien on the cloth in controversy was only to the value of the wool, from which it was manufactured. This has not been shown. Unless the plaintiff's lien were thus limited, and the defendant would in consequence have a good ground of action on the contract for a portion of the damages, which are included in the verdict, there can be no pretence, that they should have been reduced. If he had such cause of action, and have neglected to show it, he has still left to him the precise remedy, which he had provided for himself in the contract, viz., an action against Buckmaster for the breach of it.

   The judgment of the county court is therefore affirmed.

  Bennett, J., Dissenting. I cannot exactly accede to the decision, that has just been pronounced; and I may be permitted shortly to state the grounds of my dissent. It is to be borne in mind, that all, which the case finds, is, that Ford sold to the defendant Mower five cases of the cloth manufactured from the wool, which went into the possession of Ford under his contract with the plaintiff,—Mower knowing, at the time of the sale, that the five cases of cloth were manufactured from the Buckmaster wool; and the recovery was had against both defendants, for the full value of the entire five cases; whereas I think it should have been limited to what I conceive to be Buckmaster's interest in it, that is, to the value of the wool used in the manufacture of the five cases of cloth, at forty four cents a pound.

  The case does not show, that Ford had at any other time appropriated to his own use any other portion of the wool, or of the cloth manufactured from it; and we should not presume him guilty of a tort, any farther than the case shows. If the plaintiff claimed to recover beyond his interest in the wool used in the manufacture of the five cases, upon the ground that Ford had injured him in appropriating other cloth to his exclusive use, the burden of proof must have been, I think, on him. A party is never to be charged with the consequences of a tortious act, *simply by* a presumption against him. The presumption should be in his favor.

  The two first provisions in this contract, that is, that Buckmaster is to furnish and deliver to Ford a given quantity of wool to manu-

facture, and the agreement of Ford to manufacture it, would make the parties tenants in common in the cloth, when manufactured, if there was nothing more in it; and this, I think, must be conceded by every one. I do not think the subsequent provisions in the agreement change the relation of the parties, in regard to their ultimate rights. They regulate, in my view, the principles, upon which this community of interest was to be settled between them, giving at the same time some farther rights to Buckmaster, than what he could have simply as a tenant in common. I think, taking the whole contract together, it was the intention of the parties, that Buckmaster's interest in the cloth should be absolute, to the extent of the value of his wool at the price stipulated,—as it obviously would be, under its two first provisions; and that, by the subsequent provisions, Buckmaster has simply a *lien*, or a special property in the residue of the cloth manufactured by Ford, as a security for his wool, leaving the general property in Ford. This construction does justice to both parties, and gives operation to the whole contract; and it is all that Buckmaster should ask.

That this is the true construction I think is manifest. The cloth, when manufactured, was at the mutual risk of both parties; and, if consumed by fire, or lost through the insolvency of Buckmaster's consignee, Ford could have no remedy, unless Buckmaster had been guilty of negligence. Buckmaster could in no event be made a debtor to Ford for the expenses of the manufacture; and Ford's indemnity was alone in the cloth, which, by the terms of the contract, he had given to Buckmaster the *exclusive* right of controlling and sending to market. So far as Ford had any interest in the cloth, Buckmaster became his bailee, or trustee, and when he was paid from the sales of the cloth, to the extent of his interest in it, he held the residue of the avails in trust for Ford; and whatever remained was the *measure* of Ford's interest in the cloth. For such sum Buckmaster would be liable to Ford, upon the settlement of their community of interest; and not as a debtor for the manufacture of the cloth.

As there is nothing in the case to show, that Ford has in any way interfered with the rights of Buckmaster under the contract, except in the sale of the five cases of cloth now in controversy, I think, the plaintiff's recovery should be confined to the extent of

the injury he has sustained; and that is measured by the amount of wool used in the manufacture of the five cases. It would to me seem strange, that the measure of the plaintiff's recovery should be enlarged, in consequence of the omission of the defendants to prove a *negative*,—that is, that Ford had not been guilty of converting to his own use any other portion of Buckmaster's wool, or the cloth manufactured from it.

It may be and has been said, that, if Buckmaster collect of these defendants the full value of the five cases of cloth, he might be called to an account for so much money received, in the final adjustment of the relative claims of the parties under the contract. But why permit the plaintiff to recover beyond what he is *prima facie* entitled to, for the sake of giving to the defendants the right of holding him accountable for a portion of the sum collected? But suppose the plaintiff could be called to an account by Ford, which to me is not very certain, what right has Mower to call him to an account? He is in no way a party to the contract, but comes in as the vendee of Ford; and so far as Ford had a beneficial interest in this cloth, resulting from his labor, it should enure to the benefit of his vendee.

By the peculiar phraseology of this contract I consider Buckmaster had the absolute ownership in a portion of the cloth manufactured, and a *limited interest* in the residue, with a right to sell the whole, under the direction of Ford; and, when sold, the contract furnishes the measure for each of their respective rights. Upon this view, Ford had no right to sell any portion of the cloth; and the action may well be sustained; but I think the rule of damages adopted in the county court was incorrect. As the case stood, I think the value of the wool, at the price stipulated, which was used in the manufacture of this cloth, should have been the rule. In principle the case may be likened to a case, where property is pledged as security for a specific debt. If the pledgor should wrongfully take it from the possession of the pledgee, and be sued in tort, the pledgee's recovery would be limited to his debt, although the value of the property pledged exceeded it. I should, on this ground, advise a new trial.