HIRAM TURNER *v.* CHARLES WALDO.

*Pleading.   Estoppel.   Trover.   Lessor and Lessee.*

In trover the gist of the action is the conversion. A special plea denying the conversion amounts to the general issue, therefore is bad on demurrer.

A party having disclaimed the ownership of property to an administrator, and the latter relying on such disclaimer having proceeded to inventory and have the property appraised, and the appraisal duly returned and recorded, will not by these acts alone be estopped from asserting his ownership of it.

The administrator of a lessee who had died pending the lease, would at best have no more right to sell and dispose of stock on the farm owned jointly by the lessor and lessee, and to be divided at the expiration of the lease, than the lessee had; and if he so sell such property the lessor may recover in trover the value of his undivided interest.

TROVER for certain property consisting of cattle, horses and hogs. Pleas, the general issue, and a special plea of estoppel. The latter plea set up a disclaimer of ownership of the property, and other facts as hereinafter stated. To this the plaintiff demurred specially, and the court, PECK, J., presiding, sustained the demurrer, and decided that the plea was sufficient,—to which the defendant excepted. The case was tried by jury at the June Term, 1866. The plaintiff's evidence tended to show that the defendant took and converted the property described in the declaration by selling and disposing of it before the commencement of this suit, and that it was his property, and its value.

The defendant showed that he, as duly appointed administrator on the estate of Samuel S. Turner, of Randolph, deceased, about the

2d day of January, 1858, with the appraisers on said estate, repaired to the homestead of the said Samuel S., for the purpose of making the inventory and appraisal of the property of said estate ; that the plaintiff at the time was then present, and that the administrator thereupon informed the plaintiff what they were about to do, and inquired of him if he claimed to own any of the property there at said homestead, being the premises mentioned in the lease hereinafter named ; that among such property on said premises, were one pair of oxen, two cows, one horse, four calves, two yearling cattle, seven shoats, one hog, one three year old heifer, and one four year old colt ; that the plaintiff thereupon stated to the defendant that he did not own, and had no interest in or to any of the property enumerated ; that thereupon the defendant caused the appraisers to appraise, inventory and return said property, among other property belonging to said estate, as the property of said estate, which they did ; and that the plaintiff was present during all the time, and knew that said property was so being appraised, and that he made no objection ; and that such inventory and appraisal was returned to and accepted by the probate court.

The evidence on the part of the plaintiff tended to deny this.

The defendant further gave evidence tending to show that said estate was insolvent ; that said property was required for the payment of debts, and expenses of administration ; that the property thus appraised was the same identical property sued for ; and in fact belonged to the estate of Samuel S. Turner, and then rested the defence.

The plaintiff then introduced testimony tending to show that within four or five days after said appraisal, and before the administrator had sold any of said property, one Abel F. Blodgett was talking with the defendant, in the presence of the plaintiff, about buying some of this property, it being then present, and that the plaintiff then inquired of the defendant if he was going to sell this property, and the defendant told him he was if he could ; and that the plaintiff thereupon told the defendant that he, the plaintiff, owned the property, and that he forbid the defendant selling it.

The plaintiff in his writ claimed to recover, among other things,

for one undivided half of four calves, one undivided half of four yearling cattle, one undivided half of seven shoats, and for one hog; one-third part of three yearling cattle, and one-fourth part of a four year old colt. And the plaintiff gave testimony tending to show that he, together with the said Samuel S. Turner, owned the property referred to in common, and in the proportion named.

The defendant claimed, and so requested the court to instruct the jury, that if the plaintiff disclaimed ownership of the property, as the defendant's testimony tended to prove, he is now estopped from suing for and recovering the same in this action. Thus far the court charged as requested, with the addition hereafter stated. The defendant further requested the court to charge, that the plaintiff by afterwards forbidding the defendant selling said property, and notifying him that he owned the same, would not do away with the estoppel, or change or vary the rights of the parties. But the court declined so to charge the jury ; but did charge, that if the jury should find that within a few days after the occasion of the appraisal of the property by the appraisers on Samuel S. Turner's estate, and before the defendant had sold or done any act, or incurred any liability, on the faith of its belonging to Samuel S. Turner's estate, further than having it appraised as such, the plaintiff informed the defendant that the property in question was his, the plaintiff's property, and forbid the defendant selling it, as the evidence on the part of the plaintiff tended to show, the appraisal, and what the defendant claimed was said and done on the occasion of the appraisal, would not estop the plaintiff from recovering in this action, but would be evidence tending to show that the property belonged to Samuel S. Turner's estate, and not to the plaintiff; and unless the jury found upon the whole evidence that the property was the property of the plaintiff at the time of the conversion, that is, at the time the defendant sold it, the plaintiff could not recover. To this part of the charge the defendant excepted, and also to the refusal to charge on this point as requested.

The plaintiff in the opening of his case, put in a lease from himself to said Samuel S. Turner, from April 1st, 1856, to April 1st, 1857, and proved that said Samuel S. occupied under it, down to the time of his death in December, 1857, the lease having been extended by

agreement for another year, after the first year expired. The plaintiff introduced evidence tending to show that he put on the farm, under the lease, among other property, the horse, the pair of oxen, and the two cows in question, and a hog; the oxen and cows put on in the spring of 1857.

The lease provided that the parties to the lease were to divide all iucrease in and growth on the stock kept on said farm, at the expiration of the lease, April 1st. As to these articles of property, excepting the hog, which was killed and used by Samuel S., the plaintiff claimed to recover the entire value, and his evidence tended to show that he was the sole owner of them. As to the yearlings, the calves, the hog and seven pigs, or shoats, the plaintiff claimed to recover for one undivided half only; and the evidence tended to show that these animals were raised on the leased premises under the lease, and that the plaintiff and Samuel S. owned them equally in common. As to the other property it appeared it was put on to the premises by Samuel S. under the lease, and as the plaintiff was only entitled to an interest in the growth of it, by the terms of the lease, the court decided the plaintiff could not recover for it in this action, and excluded it from the consideration of the jury.

The defendant further requested the court to charge the jury, that if they found that the plaintiff and the said Samuel S. Turner in his lifetime, were the joint owners of the property hereinbefore described, as the testimony tended to show, the inventorying and disposing of the property by the defendant, as the administrator of the said Samuel S., was not such a conversion of the property as would enable the plaintiff to maintain trover for the same; but the court declined so to charge, but did charge the jury, that as to the animals that were raised on the leased premises, under and in pursuance of the lease, if the jury found that they did come into existence under the lease, and were raised on the leased premises in pursuance of and under the lease, so that by the terms of the lease the plaintiff and Samuel S. owned them in common, the plaintiff had such an interest by survivorship as that the sale of the entire property by defendant would be a conversion so as to entitle the plaintiff to recover in this action for the value of his undivided interest, that is, his undivided half. To

this portion of the charge, the defendant excepted, and also to the refusal of the court to charge on this point as requested. The court charged on all other points in the case to the satisfaction of the defendant. Verdict for the plaintiff.

*Wm. Hebard*, for the defendant.

*B. F. Fifield* and *C. M. Lamb*, for the plaintiff.

The opinion of the court was delivered by

BARRETT, J. This is an action of trover for certain chattels.

The defendant pleaded specially matter *in pais* in estoppel, to which there is a demurrer.

The rule is, that every thing may be given in evidence under the general issue in this form of action but the statute of limitations and release. It was permissible, however, to plead specially any thing which admitted property in the plaintiff and the conversion, but justified the conversion. The gist of the action is the conversion. Any thing that shows that the defendant did not convert the property, as against the right of the plaintiff to the possession of it, constitutes exactly the substance and the subject of the plea of not guilty, and if it be pleaded specially, such plea will amount to the general issue.

The plea in this case meets the gist of the action by averring facts which it is claimed in law vest the property in the defendant, and as a legal result, show that there was neither property or right of possession in the plaintiff, nor any conversion by the defendant. This certainly amounts to the general issue, and is obnoxious to the demurrer for that cause. The plea is therefore held bad, without discussing it in any other view.

As to the questions arising upon the charge of the courts.

I. The defence is based on the evidence tending to show that the plaintiff, when enquired of by the defendant, disclaimed any ownership in the property, and that the defendant, relying on such disclaimer, proceeded to inventory and have the property appraised, and the appraisal duly returned into the probate court, which was

accepted and recorded ; and that the property was needed to pay the debts of the estate, and the expenses of administration. In this connection should be considered the plaintiff's evidence tending to prove, and that the jury have found that in a few days after said disclaimer by the plaintiff, and before the defendant had moved the property or sold any of it, he made claim to the defendant that he owned the property, and forbid the defendant selling it. The verdict, under the charge of the court, in view of the evidence in the case, establishes that the plaintiff in fact owned the property, some wholly, and some in part.

As to that which he owned wholly, the question is whether, upon the facts above set forth, the court should have instructed the jury as requested on this point.

The subject of estoppel of this character has often been before the courts in this and other states, and in England, and has been fully discussed and considered both in reference to principle and authority, and the doctrine is now so well defined and illustrated as to need no further discussion. The present case only requires of us to determine how that doctrine applies to it.

It is prominent for notice that the effective point is, that to permit the party to claim against his admissions or acts would operate a fraud upon, and an injury to the party who was authorized to rely, and did rely thereupon, and has acted in such reliance. Most, if not all of the cases that have been adjudicated, as shown by the books, show that the party claiming the benefit of the estoppel has paid money, parted with property, or yielded a right in reference to which he would suffer prejudice if such benefit should be denied to him. In the present case, the defendant had done neither, up to the time the plaintiff asserted his ownership of the property and forbid the defendant selling it. The property and the right and title of the parties in respect to it, remained precisely as they had been prior to, and independently of such admissions. If the defendant had sold the property before the plaintiff asserted his ownership, the case might have stood differently. But not having done so, the only point is, whether the making of the inventory, and having the appraisal made

and returned and recorded, placed the defendant in such a position relatively to the property as to estop the plaintiff from asserting his ownership of it.

As the property was situated under the lease, it would have been the duty of the defendant to inventory it, and have it appraised with reference to the interest that the estate had in it. The duty and the act of making an inventory and having the appraisal made was merely official, and the liability of the defendant, as administrator, in reference to such property would be only commensurate with the right and interest that the estate had in it, depending upon the relation that the plaintiff and the intestate sustained to it. The defendant would be chargeable only for a proper administration of the property and interest that the intestate had in it; and showing that any of it was in fact owned by somebody else, would be a good accounting by the administrator for it, and secure his discharge from further liability to the estate.

Standing in such a posture, the mere fact that he embraced the property in the inventory and appraisal as belonging wholly to the intestate, in reliance upon, and in consequence of, what the plaintiff said in respect to it, would not constitute such an acting upon the faith of such admissions—would not so operate an injury, and produce a damage to the defendant, or to the estate, as to give efficacy to the admissions as an estoppel, on the ground that otherwise a damaging fraud would be wrought upon the defendant or the estate. This being so, it is plain that the defendant had not, either personally or officially acquired any title to, or interest in, the property by reason of the disclaimer of ownership by the plaintiff, at the time the plaintiff asserted his ownership, and forbid the defendant selling the property. Such assertion of ownership would therefore countervail the prior disclaimer, and leave the parties standing in the same relation to the property as if such disclaimer of ownership had not been made. It would follow, of course, that, as the plaintiff owned the property, a sale of it by the defendant would be a conversion, and subject him to an action of trover therefor. We think the court properly refused to charge as requested, and correctly charged the jury upon this branch of the case.

II.   In reference to those articles of property owned jointly by the plaintiff and his father.

The respective title of the plaintiff and the father in said articles is established by the jury.   The lease fixes the character in which they were held by the intestate.   The property was to be kept on the farm, and fed upon the fodder, till the expiration of the lease, April 1st, at which time the rights and interests of the parties in respect to it were to be ascertained and adjusted according to the terms of the lease.

In this respect it stands for consideration in a different light from what it might, if it were the ordinary case of a naked ownership in common.   In such case it may well be held that a sale by one of the common owners would only transfer his own title and interest to the vendee, and put him in the vendor's position of common owner with the other party.   But such is not this case.   As the property was conditioned in the possession of the intestate under the lease, when the defendant, as administrator, before the expiration of the lease, assumed to sell the property off from said farm, he was doing something more than selling the absolute title of a joint owner, or owner in common, and leaving the plaintiff invested with, and enjoying his full title and right as the other joint or common owner.

If, under the lease, the plaintiff and the intestate should be regarded as having held a partnership relation to this property, then, of course, on the decease of the intestate, the plaintiff, by the right of survivorship, would alone be entitled to take possession and dispose of it,— being accountable to the estate for the interest of the estate in it. This perhaps was the view entertained by the court when giving the charge to the jury.   But, without determining whether this is the correct view or not, we are clearly of the opinion, that the most that the defendant could lawfully claim is, that he stands in the place and on the rights of his intestate, and that he could not lawfully do any thing with the property that said intestate could not have done if he had been living.

The creatures involved in this part of the case were the produce of creatures solely owned by the plaintiff, and the right and interest of the intestate in them were created by the provisions of the lease, and

title in him was to be perfected according to those provisions. He could not have asserted title as absolute owner in common with the plaintiff till the expiration of the lease, and then only by virtue of having performed on his part. If he had-assumed, as did the defendant, to sell these creatures off from the farm, as his own in absolute and entire title, he would have brought himself within the principle of several cases decided in this state, and strikingly within the authority of the case of *Briggs* v. *Oaks et al.*, 26 Vt. 13ɛ.

Independently of the lease, the produce of the creatures owned by the plaintiff would have belonged solely to the plaintiff; and least of all could the defendant invest himself with a title that would warrant him in disposing of the property in the manner he did by violating the provisions of the lease, upon which provisions, and the manner in which they should be carried out, any right or interest in the defendant's intestate depended. See *Swift* v. *Moseley*, 10 Vt. 208; *Buckmaster* v. *Mower et al.*, 21 Vt. 204; *Grant* v. *King et al.*, 14 Vt. 367.

In the opinion of this court no error was committed in this case on the trial in the county court, and judgment is affirmed.