Daniels v. Nelson.

---

SAMUEL DANIELS v. NATHANIEL NELSON.

*Tax. Possession. Fraud in Law.*

The doctrine of *fraud in law*, as applicable to change of title in personal property without change of possession, is merely a kind of rule of evidence, prescribing what facts shall be held to show conclusively the existence of fraud, and creating a kind of *estoppel in pais*.

The rule rests upon grounds of policy only, and its application has been limited to creditors and *bona fide* purchasers. It does not apply in favor of a state or town levying a tax.

Therefore, a chattel belonging to A can not be levied upon for a tax due by B, although it formerly belonged to B, and still remains in his possession.

REPLEVIN for one bay mare. Plea, the general issue, and notice of justification by the defendant, under a rate-bill and warrant, as collector of school district No. 6 in Woodbury, and the taking the property as the property of Luke Daniels, on tax against him. Trial by the court, March term, 1868, PECK, J., presiding. Judgment for the defendant for damages and costs and for return of the property.

The plaintiff introduced evidence showing the taking by the defendant on or about the 4th of September, 1866, and tending to show that the mare was the property of the plaintiff by a transfer from Luke Daniels to him.

It appeared that all the proceedings of the collector in demanding the tax and in taking, keeping, and advertising the mare for sale, were regular, and on this branch of the case no question was made. The mare was taken out of the defendant's possession on

11

this writ of replevin, on the day appointed for sale and before the · time of sale had arrived.

The defendant introduced evidence tending to show that the mare, at the time he took her on the rate-bill and warrant, was the property of Luke Daniels and in his possession and control.

It appeared that the tax of ninety cents, under which the defendant justified, was assessed against Luke Daniels upon his poll, he having no other list in town that year.

In·relation to the ownership, possession and control of the mare in question, it appeared that Luke Daniels, on the 2d of January,. 1852, at the time of the execution of the deed and mortgage · hereinafter mentioned, was the owner and occupant of the farm,. with the dwelling-house and other buildings thereon, in Woodbury, described in said deed, with a considerable amount of live stock, farming tools, and such other personal property as is necessary and convenient for a farmer in carrying on a farm; that he had been such owner and occupant many years, during which time he had, with his wife and children, resided on said farm, and carried it on in his own behalf; that on the 2d of January, 1852, in pur-· suance of a verbal agreement to that effect, he conveyed all his property, real and personal, to the plaintiff, his son, who had a few months before arrived at the age of 21 years, and took a mortgage. Luke Daniels was then about 49 years old, and accustomed and able to do considerable labor on the farm, though at times unable to do the hardest kind of farm labor. The plaintiff testified, and the court so found, that he was to pay all the debts his father owed at that time (some two or three hundred dollars), and did pay them. Among the personal property so on the farm and transferred, was the mare in question, which Luke Daniels had then owned and kept and used on the farm for several years. From the time of the execution of the deed and mortgage Samuel Daniels and his father have lived on the farm, sub-· stantially in pursuance of the contract. From the date of the deed to the time when the mare was taken by the defendant, she was kept on the farm, and for driving about, as the wants and convenience of Samuel and his father required, both using her for the

various purposes as occasion required, Samuel sometimes having other horses on the farm, and sometimes none but this.

The court found that the contract contained in the deed and mortgage, was in good faith, and not fraudulent *in fact*, but that, up to the time the defendant took the mare, she had been held out repeatedly by Samuel Daniels, and by Luke Daniels by the knowledge and acquiescence of the plaintiff, as the property of Luke Daniels. Although the court found that, as between the plaintiff and his father, the legal title to the mare passed to the plaintiff by the deed, and that there never had been any actual contract between them since to change the legal title, yet the court found and held that the ostensible ownership and possession were so far in Luke Daniels as to render the mare subject to levy for the tax in question, even if she would not have been if Samuel Daniels had taken and kept the exclusive possession and claim of title in himself. On the occasion of the taking of the mare by the defendant, Luke Daniels had been driving her in a wagon to the post-office (a few miles), and drove up into the door-yard at home; and the defendant took the mare out of the wagon while Luke Daniels sat in the wagon. Samuel Daniels was present, and as the defendant was leading the mare away, Samuel Daniels forbade his taking her, claiming that he owned her.

The evidence as to Luke Daniels's representing and holding out the mare as his property, was objected to by the plaintiff's counsel, the defendant's counsel proposing at the same time to show that it was with the knowledge and sufferance of the plaintiff and without any objection by the plaintiff; and the proof on this point came up to the offer. The plaintiff excepted to the admission of this evidence.

The court rendered judgment for the defendant for damages and costs and for return of the property, to which the plaintiff excepted.

There were several questions and points of exception as to the regularity of the proceedings of the school district, and upon other points; but discussion of the same and decision thereon are omitted in the opinion, the single question decided being the question of *fraud in law.*

*Charles H. Heath* and *Heaton & Reed,* for the plaintiff.

*Redfield & Gleason,* for the defendant.

At the general term, November, 1868, the opinion of the court was delivered by

BARRETT, J. In this case the property in question, a mare, was distrained upon a tax-warrant in satisfaction of a *poll-tax* against the plaintiff's father, there being no tax against him on account of said mare or of any other property. The county court found the legal title to the property to be in the plaintiff, as between him and his father, by a contract made in good faith, and not fraudulent *in fact.* But the court further found and held that the ostensible ownership and possession were so far in the father as to render the mare subject to levy for the tax, even if she would not have been if the plaintiff had taken and kept the exclusive possession and claim of title in himself. The question is thus directly presented, whether the doctrine of *fraud in law* is applicable, so as to subject them are to the levy made, in this case.

The several English statutes, the substance and spirit of which are embraced in our own, on the subject of fraudulent conveyances, are designed to protect creditors and *bona fide* purchasers, and the *fraud,* which gives occasion for those statutes, looks exclusively to such creditors and purchasers; and, moreover, they contemplate actual fraud both in intent and act. The doctrine, persistently adhered to in Vermont, of *fraud in law,* does not give any additional scope either to the statutory or common law operation of *fraud.* That doctrine works in subordination to such law, and adopts a particular mode of determining the existence of the vitiating fraud in the given case. In a sense, it propounds a kind of rule of evidence, prescribing what facts proved shall be held to show the existence of such fraud. It says to the party, prove that there was no visible change of substantial, exclusive possession from the vendor to the vendee, and the fraud required by the law to invalidate the sale as against creditors and *bona fide* purchasers, will be established.

In many states, and at some periods in England, the lack of

such change of possession has not been allowed such conclusive effect, but has constituted matter of circumstantial evidence bearing on the question of *actual* fraud. The conclusive effect of that fact in this, and some other of the states, has been allowed and adopted as matter, and on the ground, of *policy.* When the ground and reason of that policy is considered, the proper extent of the application and operation of the doctrine itself will be seen. Possession, the holding and using of an article of property in the manner of an owner, is a strongly evincive badge of ownership; and when it continues to be exercised upon property by the person who had in fact before owned it, the public and individuals would be warranted in presuming that such ownership was continuing, and in acting accordingly, without making inquiry. Indeed, very few persons would think of making inquiry as to a change of *title,* unless some apparent change in the possession and use of the property had occurred. The ownership of property being a leading ground and inducement for credit, as well as for confidence in dealing with and trading for it, in order to preclude the continued possession of property from inducing an unfounded credit, or leading to a fallacious confidence in making a purchase, the law adopts a kind of conclusive *estoppel in pais,* in favor of creditors and *bona fide* purchasers of the former owner, he continuing in the possession and use in a manner consistent with his continuing still to be the owner of it. It does this in order at once and entirely to relieve the subject of the continued possession of property by the former owner, as a ground of credit and confidence, from the embarrassment that would be likely to, and often does, result from having to settle occult questions as to the real character of transactions between the parties to the pretended transfer of title, when not accompanied by a corresponding change of possession. In this view and to this intent, it may be regarded as a kind of rule of title and assurance in the pretended vendee. The propriety of the rule is well justified by commercial, as well as by judicial, experience, and we may properly continue to abide, as intimated by MATTOCKS, J., in *Farnsworth* v. *Shepard,* 6 Vt., 521, notwithstanding the doubt expressed by Chancellor Kent, in noting, with com-

mendation, that intimation in the second volume of his comment-aries, 526 (ed. of 1840).

Now it is obvious that the policy and final cause of the rule can not be predicated of the case in hand. The party to which the tax is owing, is not a *creditor*. The state, the town, the school district, do not give credit by way of trust and confidence. They make an authoritative and arbitrary exaction, and are armed with all the power of the government for its enforcement out of any and all of the property of the party taxed, including the *enticement* of the prison walls, in want of the property whereof to get satisfaction. In *Johnson* v. *Howard and trustee*,[*] it was held that town taxes could not be deducted in diminution of the liability of the town as trustee of the defendant, under section 52 of chapter 34 of the General Statutes.

In the present case, as before remarked, the tax was not on account of any property. It was only a *poll*-tax, that fact indica-ting that, likely enough, not property, but only the person of the party taxed, might be reached by warrant for its compulsory collection.

The view we take of the subject, in its reasons as developed in its history, is fully sustained by the text-books and the cases. 2 Kent's Com., p. 515 to 552 inclusive, contains the best summary of the law of the subject that I have seen. It will be found that all the cases in Vermont, beginning with *Mott* v. *McNiel*, 1 Aik., 162, and ending with *Houston* v. *Howard*, 39 Vt., 55, treat the matter of *fraud in law* (constructive fraud) predicated upon a lack of change of possession, as originating in *policy*, and limited to creditors and *bona fide* purchasers without notice. The doctrine has never been better stated, as to its grounds and its limit and its practical operation, than it was by HUTCHINSON, J., in *Mott* v. *McNiel;* and it has not been departed from in principle in any subsequent case that has come to our attention. He says: "A sale of personal property, without change of possession, though it may be valid as between the parties, is void as to cred-itors. It is usually termed a fraud in law. This expression may seem to people not versed in the law, to contain some mystery.

---

[*] For the report of this case see page 122. REPORTER.

If we would convey the same idea, in language understood by every person, we may say the sale is not complete as to creditors, till there is a change of possession. And this must be a visible, substantial change ; so that the possession will no longer give a credit to the former owner. * * * If a man actually owns and possesses personal property, the world have a right to presume he remains the owner, so long as he retains the possession. People may well give him credit on account of this property, and when they attach it for his debts, they can hold it."

The ground of the doctrine is strongly developed in *Foster* v. *Mc-Gregor et al.*, 11 Vt., 595, by BENNETT, J., in which it was held that property exempt from attachment and execution, was not subject to the rule of fraud in law, for the reason that it did not enable the vendor to acquire a false credit, nor was it against sound policy as opening a door to fraud ; and yet there is no exemption of such property as against a tax-warrant.

As the present case does not fall within the reason of the rule, and as no precedent is shown for applying the rule to such a case, we see no legal ground or reason for subjecting the plaintiff's property to the compulsory payment of his father's poll-tax. No party in interest has been misled. No party in interest could be misled in such a case, by such possession and use of the property by the plaintiff's father as were shown in this case.

The fact that the defendant levied on it because of such possession and use, is no element in the law of the subject. It was an experiment on his part to get the tax satisfied. What gives potency to the lack of a change of possession, is its tendency to induce a false credit in the *creation* of claims against the former owner, who still continues in possession, not that it may induce a party to levy final process upon it in satisfaction of his claim. The case in this respect bears a close analogy to one feature of *Turner* v. *Waldo*, 40 Vt., 51.

As the view we take of the question thus discussed, is conclusive of this case, we do not think it worth while to worry ourselves, or the poor school district involved, by scanning, with a judicial eye, the record of its doings.

The light thrown upon the subject by the industrious criticisms

of the learned counsel, may enable it in the future to pursue right courses, without repeating any of the errors that may be obnoxious to the exceptions taken thereto; and, since it has now been so thoroughly "dug about," if not encouraged by any other process of cultivation, we are disposed to accord to it the opportunity asked for the fruitless fig-tree.

The judgment is reversed, and judgment for the plaintiff for nominal damages and his costs.