MOORE v. MORLEDGE ET AL.

1. **Swamp Lands:** CONTRACT: TAXATION. When a county has entered into a contract for the sale of its swamp lands, to be performed when its title to the same shall have been perfected, and subsequently repudiates the contract, it cannot in the meantime subject the lands to taxation or dispose of them at tax sale.

*Appeal from Page Circuit Court.*

MONDAY, DECEMBER 13.

THIS is an action to quiet in plaintiff the title to the north half of the northeast quarter, section four, township seventy, range thirty-six, in Page county.

The court below entered a decree for plaintiff as prayed. The defendants appeal.

*John R. Morledge*, for appellants.

*W. W. Morsman*, for appellee.

DAY, J.—The land in controversy constitutes part of the swamp land grant. On the 9th of April, 1856, the county of Page, by Young Farris, clerk of the county, entered into a contract with Le Grand Byington for the sale of the swamp lands to him.

This contract embraced 2038 acres of land, which was sold for one dollar and a-quarter an acre, one-half the purchase price, or twelve hundred and ninety-eight dollars and seventy-five cents, being paid down.

The contract provided that Byington should pay said county the further sum of twelve hundred and ninety-eight dollars and seventy-five cents, "being the remainder of the purchase money, upon a demand made upon him therefor after reasonable notice, at any time after the said county shall have perfected her title to the said land; and upon such payment being made by said Byington, or his assigns as aforesaid, then the said county of Page will cause to be made to the holder of this contract a patent for the said land, in accordance with the laws of Iowa, for the sale and conveyance of the swamp and overflowed lands."

On the 10th day of December, 1860, the lands embraced in said contract were patented to Page county by the governor of the state, and thereby the title became perfected in the county. The county never demanded of Byington or his assigns the balance of the purchase money, and did not, according to the contract, give him notice that it had perfected its title to said lands, nor has said county ever given to Byington or to any holder of the contract notice that the county was ready to comply with its part of the contract.

The lands in controversy, being part of the lands embraced in the contract with Byington, were assessed to an unknown

owner for taxation for the years 1862 and 1863, and in 1864 they were sold to the defendant Morledge for the delinquent taxes of those years. On the 23d of January, 1868, Morledge surrendered his certificate of purchase, which contained other lands than those in controversy, for the purpose of procuring a treasurer's deed, and by mistake the treasurer omitted from the deed the west half of the lands in controversy. Morledge conveyed the lands in dispute to the defendant Platner. After this suit was commenced, the defendant Morledge discovered the mistake in the treasurer's deed, and applied for a deed for the other forty, which the treasurer refused to make on the ground that it had been deeded to Moore.

In the winter or spring of 1866 or 1867, the plaintiff became the holder of the Byington contract.

At the session of the Board of Supervisors in 1867, the plaintiff, as holder of the contract, offered to pay the balance due thereon, and made application for a deed to said lands. At this time the county had conveyed several tracts of the land to other parties.

No action was taken in the matter until the January session, 1869. At this time a basis of settlement was agreed upon, and the Board of Supervisors directed a deed to be made according to the contract and terms of settlement. In the meantime the president of the board procured an opinion from the Attorney General of the state, that Young Farris had no authority to enter into the contract with Byington, and that it was void. Thereupon he refused to execute the deed to Moore, which the board had ordered; and at the September meeting of the board, in 1869, this action of the president was sustained.

At the January session, 1872, of the Board of Supervisors, the plaintiff agreed to take 880 acres of said land; being all that the county had not previously conveyed to other parties, at the price of $1100, in full settlement of his claim under the contract, and to enter into a bond in the sum of $5000 to indemnify the county against liability to Byington.

This proposition was accepted, and on the 10th of January, 1872, the county conveyed to plaintiff the lands in controversy,

in connection with other lands, by a deed of general warranty. On the same day the county conveyed another portion of the lands embraced in the settlement, by a quit claim deed.

The facts of this case bring it fully within the principles of *The Iowa Railroad Land Company v. Story County*, 36 Iowa, 48. The county, by neglecting to notify Byington that it had acquired title to the lands; by selling more than half of it to other parties; and by refusing until 1872 to convey to the holder of the contract, repudiated, so far as it was possible to do, the contract made with Byington. The county could not thus refuse to recognize the validity of the contract, and at the same time subject the land to taxation.

The judgment of the court below is

AFFIRMED.