THE TRUSTEES FOR THE SUPPORT OF PUBLIC SCHOOLS

*v.*

THE INHABITANTS OF THE CITY OF TRENTON.

1. The charter of the city of Trenton, approved March 19th, 1874, makes taxes imposed on lands a lien paramount to prior judgments, mortgages and other encumbrances thereon.

2. The provisions of the city charter giving taxes priority over judgments, mortgages and other encumbrances on the same premises, were not abrogated by paragraph 12, section 8, article IV, of the constitutional amendments of 1875.

---

NOTE.—The common law rule was that, " everything for the benefit of the king shall be taken largely, as everything against the king shall be taken strictly." *Coke's Case, Godbolt, Hobart, C. J.;* and courts are bound to take notice of everything relating to the queen's privilege. *Elderston's Case,* 2 Ld. *Raym.* 980.

So, by virtue of its prerogative, the crown or state is not liable for costs, except by express statute ( *Wilkinson* v. *Allot, Cowp.* 366 ; *London*

Trustees of Public Schools v. City of Trenton.

3. Every system of taxation consists of two parts: the one relating to the assessment (the designation of the persons and things which shall be the subjects of taxation) and the apportionment of taxation among such persons and things, in the ratio prescribed by law; the other, the collection of the taxes assessed, by the enforced payment thereof. Paragraph 12, section 8, article IV, of the constitutional amendments, relates only to the assessment of taxes, and concerns only such equalization of the burdens of taxation as will result from the designation of the property which shall be the subjects of taxation, and the apportionment of the taxes thereon, under general laws, by uniform rules, and upon true valuations. The mere machinery by which taxes shall be assessed and collected, is left in legislative discretion.

4. The abrogation of a prior statute by a subsequent statute, or a subsequent constitutional provision which is self-executing, by reason of the repugnancy between the two, extends only so far as they are incompatible; in other respects the original law is left in full force and effect.

5. The provisions of the charter of the city of Trenton, preferring the lien for taxes over prior mortgages and other encumbrances, do not apply to mortgages made to the state, or its representatives, to secure the funds of the state invested on mortgage.

6. The immunity of the property of the state, and of its political subdivisions, from taxation, does not result from a want of power in the legislature to subject such property to taxation. But inasmuch as taxation of public property would necessarily involve other taxation for the payment of the taxes so laid, the inference of law is, that the general language of statutes prescribing the property which shall be taxable, is not applicable to the property of the state, or its municipalities.

v. *Att'y-Gen.*, 1 *H. of L. Cas.* 440; *Reg.* v. *Beadle*, 7 *El. & Bl.* 492; *Moore* v. *Smith*, 5 *Jur.* (*N. S.*) 892; *State* v. *Kinney*, 41 *N. H.* 238; *State* v. *Barton*, 3 *Humph.* 13; *Governor* v. *Powell*, 23 *Ala.* 579; *Bradford* v. *Rowe*, 3 *Pick.* 17; *Houston* v. *Neuse River Co.*, 8 *Jones* (*N. C.*) *Law* 476; *State* v. *Harrington*, 2 *Tyler* 44; *Israel* v. *State*, 8 *Ind.* 467; *People* v. *Pierce*, 1 *Gilm.* 553; *Com.* v. *Todd*, 9 *Bush* 708; *People* v. *Clark*, 9 *N. Y.* 349; see *Reg.* v. *Bewdley*, 1 *P. Wms.* 207; *Com.* v. *Stebbins*, 4 *Gray* 25; *Charlotte Hall* v. *Greenwell*, 4 *Gill & J.* 407; *Hathaway* v. *Roach*, 2 *Woodb. & M.* 63; *Swan* v. *Colfax*, 2 *Tyler* 258); the rule applies to a *qui tam* (*O'Driscoll* v. *McCants*, 2 *Bay* 323; *Clark* v. *Dewey*, 5 *Johns.* 251; *State* v. *Stearns*, 11 *Fost.* 106); in cases of action by or against a county, see (*Edgar Co.* v. *Mayo*, 3 *Gilm.* 82; *Avery* v. *Slack*, 19 *Wend.* 50; *Com.* v. *McCuen*, 75 *Pa. St.* 215; *State* v. *Bonner*, *Busb.* (*N. C.*) *Law* 257; *Watson* v. *Moniteau Co.*, 53 *Mo.* 133; *Butman* v. *Fowler*, 17 *Ohio* 101; *Gillespie* v. *Broas*, 23 *Barb.* 370; *Young* v. *Buncombe*, 76 *N. C.* 316); or a township (*Hobbs* v.

Trustees of Public Schools *v.* City of Trenton.

7. The city of Trenton has no power to tax mortgages in which the funds of the state have been invested, though mortgages are expressly included in the enumeration of property subject to taxation ; and from the fact that such mortgages are, by implication, excepted from that part of the statute which prescribes the subjects of taxation, it follows logically, as a necessary sequence, that they are not included in, or affected by, the other provisions of the statute which provide a mode for the collection of taxes.

8. Independently of any doctrine founded on the notion of prerogative, as a matter of construction, it must be clear, from the nature of the mischiefs to be reached, or the language used, that the government was in the contemplation of the legislature, before a court would be authorized to put a construction on a statute which would affect the rights of the state.

9. Mortgages made to the chancellor for investments of moneys in the court of chancery, which are required to be invested by the order of the chancellor, and in his name, are within the same principles of immunity from the operation and effect of the tax laws as apply to mortgages in which the funds of the state are invested.

On appeal from a decree of the chancellor, founded on the opinion of Barker Gummere, esq., a special master, reported in *Trustees of Public Schools* v. *Trenton*, 3 *Stew.* 618.

*Mr. E. L. Campbell*, for appellant.

*Cowden*, 20 *Ind.* 314; *Buckfield* v. *Gorham*, 6 *Mass.* 445; *Kennebeck* v. *Crossman*, 6 *Mass.* 458; *School Dist.* v. *Dean*, 17 *Mich.* 223; *Ex parte Bennett*, 3 *Den.* 175; *Township* 19 v. *Clark*, 1 *Ind.* 139); or a city (*Durkee* v. *Janesville*, 28 *Wis.* 464).

So, interest is not payable by a state, except by express contract (*State* v. *Thompson*, 5 *Eng.* (*Ark.*) 61; *State* v. *Bank of Washington*, 18 *Ark.* 554, 565; *Auditorial Board* v. *Arles*, 15 *Tex.* 72; *Att'y-Gen.* v. *Cape Fear Co.*, 2 *Ired. Eq.* 444; *State* v. *Mayes*, 28 *Miss.* 706; *Green* v. *State*, 53 *Miss.* 148; see *Swann* v. *Turner*, 23 *Miss.* 565; *Thorndike* v. *United States*, 2 *Mason* 1; *Respublica* v. *Mitchell*, 2 *Dall.* 101; *People* v. *Canal Co.*, 5 *Den.* 401; *Milne* v. *Rempublicam*, 3 *Yeates* 102; *Danforth* v. *Williams*, 9 *Mass.* 324; *State* v. *Sarratt*, 14 *Rich.* 177); in case of a county (*Madison Co.* v. *Bartlett*, 1 *Scam.* 67); or a city (*Pekin* v. *Reynolds*, 31 *Ill.* 529; *Chicago* v. *People*, 56 *Ill.* 327); and whether statutes in regard to usury bind the king, see (*Willion* v. *Berkeley*, *Plowd.* 236; *Rex* v. *Ridge*, 4 *Price* 50).

As to the prerogative right of a state to fines, see (*People* v. *Bircham*, 12 *Cal.* 50; *Shoop* v. *Com.* 3 *Barr.* 126); or forfeitures (*Vermont* v. *Society*, 2 *Paine C. C.* 545; *Thompson* v. *Carr*, 5 *N. H.* 510; *Jackson* v. *Prevost*, 2

*Mr. W. Y. Johnson* and *Mr. J. P. Stockton,* attorney-general, *contra.*

*Mr. E. L. Campbell,* for appellants.

I. The lien for taxes, and the lien of certificates of sale for taxes, created by the charter of the city of Trenton, are first liens as against mortgages older in date.

*Campbell* v. *Dewick,* 5 *C. E. Gr.* 186; *Duncan* v. *Smith,* 2 *Vr.* 325. *Morrow* v. *Dows,* 1 *Stew.* 459, 464, does not apply; see also, *Hopper* v. *Malleson,* 1 *C. E. Gr.* 382; *Parker* v. *Baxter,* 2 *Gray* 185; *Bodertha* v. *Spenser,* 40 *Ind.* 353; *Dale* v. *McEvers,* 2 *Cow.* 118; *Butler* v. *Bailey,* 2 *Bay* 244; *Dunlap* v. *Gallatin Co.,* 15 *Ill.* 9; *Hutchins* v. *Moody,* 30 *Vt.* 658; 46 *Ga.* 412; 25 *Ga.* 103; 49 *Mo.* 586; 10 *Pa. St.* 466; *Freeholders* v. *State Bank at New Brunswick,* 2 *Stew.* 268.

II. The lien of the tax or certificates of sale is not affected by par. 12, sec. 7, art. IV, of the amended constitution.

*State* v. *Hoffman,* 1 *Vr.* 346.

III. The tax lien has its full force and vigor as a first lien against mortgages held by the trustees for the support of public schools, and those of the chancellor.

*Mahon* v. *Crothers,* 1 *Stew.* 567; *Freeholders* v. *State Bank at New Brunswick,* 3 *Stew.* 311; *Rev.* p. 1152, § 65; *Spangler*

---

*Caines* 164; *Den* v. *Clark, Coxe* 340; *Boyd* v. *Banta, Coxe* 266; *Wooldridge* v. *Lucas,* 7 *B. Mon.* 49; *Rogers* v. *Rawlings,* 8 *Port.* (*Ala.*) 325; *Conner* v. *Bent,* 1 *Mo.* 235; *Platner* v. *Sherwood,* 6 *Johns. Ch.* 118; *Montana* v. *Lee,* 2 *Montana* 124; *Rankin* v. *Rankin,* 6 *Mon.* 534).

The state is bound by public laws for the promotion of learning, the advancement of religion and the support of the poor, although not expressly named (*Bac. Abr., Statutes* (*I*) 7; *Vin. Abr., Statutes* (*E.* 10), § 9; *Gladney* v. *Deavors,* 11 *Ga.* 79); but this rule is not to be construed so as to deprive the crown of any prerogative (1 *Wooddes.* 32; *Att'y-Gen.* v. *Newman,* 1 *Price* 438; *Vin. Abr., Statutes* (*E.* 10), § 12; *Rex* v. *Armagh,* 8 *Mod.* 5).

Statutes for the furtherance of justice bind the state, as writs of error (*Rex* v. *Wright,* 1 *Ad. & El.* 484; *State* v. *Kroner,* 2 *Tex.* 492; *De Bode* v. *Reg.,* 13 *Q. B.* 364); or appeals from justices' orders (*Moore* v. *Smith,* 5

Trustees of Public Schools *v.* City of Trenton.

*v. York Co.*, 13 *Pa. St.* 325 ; *Parker* v. *Baxter*, 2 *Gray* 185 ;
*Montgomery* v. *Trenton*, 11 *Vr.* 89 ; *Dungan's Appeal*, 68 *Pa.
St.* 204 ; *People* v. *Doe*, 36 *Cal.* 220 ; *Bac. Abr., tit. Preroga-
tive* (*E.* 5) ; *U. S.* v. *Hoar*, 2 *Mason* 311, *and cases cited ;* 1
*Black* 261 ; *Spen.* 48 ; *Shower's P. C.* 75 ; *Giles* v. *Grover*, 1
*Cl. & Fin.* 72 ; *State* v. *Grover*, 8 *Vr.* 174 ; *O'Hanlin* v. *Den,
Spen.* 48, 51, 1 *Zab.* 590.

. IV. Even if our lien were the last, we would be entitled
to have our money raised and paid to us, which is not done
by the decree.

There is scarcely any limit to the number of instances
which might be cited, in which this rule would not be held
to operate, if in force at all in this state.

*Attorney-General Stockton*, for respondents.

I. The mortgages made to the trustees for the support of
public schools, are the property of the state, dedicated by the
constitution to the special trusts of education, and are not
taxable.

*Montgomery* v. *Trenton*, 11 *Vr.* 91 ; *Rex* v. *Terrott*, 3 *East*
506 ; *Amherst* v. *Somers*, 2 *T. R.* 372 ; *Att'y-Gen.* v. *Hill*, 2
*Mee.* & *W.* 160 ; *Chicago* v. *Miller*, 80 *Ill.* 384.

---

*Jur.* (*N. S.*) 892 ; *Rex* v. *Allen*, 15 *East* 333 ); exemption of a debtor's
chattels from execution (*Thompson on Exemp.*, ∂ 385, *et seq.; Ford* v. *Com.*,
29 *Gratt.* 683 ; *Whiteacre* v. *Rector, Id.* 714) ; in actions by the king or state,
the proceedings are the same as in suits by individuals (*Duke of Bruns-
wick* v. *King of Hanover*, 6 *Beav.* 1 ; *Rowe* v. *Brenton*, 8 *Barn. & Cress.* 755 ;
*Prioleau* v. *United States, L. R.* (2 *Eq.*) 659 ; *State* v. *Kroner*, 2 *Tex.* 492 ;
*State* v. *Buttles*, 3 *Ohio St.* 309 ; *People* v. *Rockwell*, 2 *Scam.* 3 ; *Stearns* v.
*United States*, 2 *Paine C. C.* 300 ; *Sessions* v. *Stevenson*, 11 *Rich. Eq.* 282 ;
*Com.* v. *Levy*, 23 *Gratt.* 21 ; *People* v. *Johnson*, 14 *Ill.* 342 ; *Mitchell's estate*,
2 *Watts* 87 ; *Dupont* v. *Downing*, 6 *Iowa* 172 ; *Finley* v. *Caldwell*, 1 *Mo.* 512 ;
*State* v. *Nichols*, 39 *Miss.* 318) ; but a trial by jury cannot be demanded
(*Harris* v. *Wood*, 6 *Mon.* 641) ; nor can the state be joined with an heir
whose citizenship is doubtful, for the sake of preventing the abatement
of a suit (*St. John* v. *West*, 4 *How. Pr.* 329).

So, the statute *de donis* ( *Willion* v. *Berkeley, Plowd.* 227) ; *quia emptores* (*Id.*
240 ; see *People* v. *Van Rensselaer*, 9 *N. Y.* 291) ; relief of the poor (*Id.*

II. No construction can be given to the charter of the city of Trenton, or the general tax law, which would authorize the taxation of state property or the. chancellor's mortgage.

*People* v. *Doe,* 36 *Cal.* 220 ; *Com.* v. *Morrison,* 2 *A. K. Marsh.* 524–536 ; *Att'y-Gen.* v. *Hill,* 2 *Mee. & W.* 160 ; *Parker* v. *Irons,* 6 *Vr.* 464 ; *Clark* v. *Grover,* 8 *Vr.* 174 ; *Rogers* v. *Woodnut,* 10 *Vr.* 654 ; *Howell* v. *Cornell,* 2 *Vr.* 374 ; *Gray* v. *Boston,* 15 *Pick.* 376 ; *Sweet* v. *Boston,* 18 *Pick.* 123 ; *Com.* v. *Campbell,* 33 *Pa. St.* 380 ; *Com.* v. *Cuyler,* 5 *W. & S. App.* 275.

III. Money in court is money in possession of the state, acting through its judicial and ministerial officers, and such possession is acquired by the exercise of the sovereign power of the state, under the direction of its courts, and is not liable to taxation.

*In the matter of Killinger,* 9 *Paige* 62.

IV. The assessment of 1875, for taxes, by virtue of the provisions of the charter of the city of Trenton, is not a prior lien to said mortgages.

*Tindall* v. *Vanderbilt,* 4 *Vr.* 38 ; *Hopper* v. *Malleson,* 1 *C. E. Gr.* 382 ; *Morrow* v. *Dows,* 1 *Stew.* 459 ; *State Trustees* v. *Reading,* 7 *Vr.* 66 ; *Golding* v. *Chambersburg,* 8 *Vr.* 258 ; *Tide Water Co.* v. *Coster,* 3 *C. E. Gr.* 219.

236 ; 11 *Co.* 68*b; Reg.* v. *Ponsonby,* 3 *Q. B.* 13) ; *Marlbridge,* of distresses (2 *Inst.* 142) ; discontinuances (2 *Inst.* 681.)

The rule that general words in a statute do not include the sovereign, unless expressly named, is also exemplified in the following instances: The statute of limitations (*Ang. on Lim., chap. V*), including, in New Jersey, the political subdivisions of the state (*Cross* v. *Morristown,* 3 *C. E. Gr.* 311 ; *Jersey City* v. *State,* 1 *Vr.* 521 ; *Tainter* v. *Morristown,* 4 *C. E. Gr.* 47 ; *State* v. *Trenton,* 7 *Vr.* 198 ; see *Att'y-Gen.* v. *Newark,* 2 *Hal. Ch.* 201). Some exceptional cases are found (*Randal* v. *York,* *Kirby* 314 ; [*contra, Parmilee* v. *McNutt,* 1 *Smeed & Marsh.* 179] ; *People* v. *Van Rensselaer,* 8 *Barb.* 189, 9 *N. Y.* 291 ; *Mitchell's Estate,* 2 *Watts* 87). An administrator's bond, although taken in the name of the state, is not within the rule (*State* v. *Pratte,* 8 *Mo.* 286) ; whether a transfer from an individual to a state, or *vice versa,* after the statute had begun to run, would suspend it, see (*United States* v. *Buford,* 3 *Pet.* 12 ; *United States* v.

Trustees of Public Schools v. City of Trenton.

V. The assessments of 1876 and 1877, for taxes, are not, by virtue of the charter of the city of Trenton, prior liens to said mortgages.

*North Ward Nat. Bank* v. *Newark*, 10 *Vr.* 380; *Morrow* v. *Dows*, 1 *Stew.* 459.

DEPUE, J.

The trustees for the support of public schools of the state of New Jersey filed this bill for the foreclosure of a mortgage upon certain premises in the city of Trenton. The complainants' mortgage was made on the 23d of April, 1861, and recorded on the 26th of the same month. It was given to secure $5,000, money belonging to the public school fund, and invested by the trustees pursuant to the statute.

Upon the same premises there was a second mortgage, bearing date April 15th, 1867, for $5,513.33, given by Taylor to the chancellor of the state of New Jersey as an investment of moneys in the court of chancery, invested in the name of the chancellor for the benefit of parties to a suit, and their representatives.

Taxes assessed against Taylor for the mortgaged premises for the years 1875, 1876 and 1877, were in arrear and are unpaid. The city of Trenton was made a party to the suit

*White*, 2 *Hill* (*N. Y.*) 59; *Levasser* v. *Washburn*, 11 *Gratt.* 572, 579; *Hall* v. *Gittings*, 2 *Har. & Johns.* 112).

The statute of frauds (*Rex* v. *Mann*, 2 *Strange* 749; *Rex* v. *Portington*, 1 *Salk.* 162; *Giles* v. *Grover*, 9 *Bing.* 128, 148; *Adlington* v. *Cann*, 3 *Atk.* 141, 154; see *Clark* v. *Shultz*, 4 *Mo.* 235; *Zickafosse* v. *Hulick*, *Morris* 175; *State* v. *Baum*, 6 *Ohio* 155; *Phillips* v. *Thompson*, 1 *Johns. Ch.* 131; *Thomas* v. *Harrodsburg*, 3 *A. K. Marsh.* 298; *Magdalen College Case*, 11 *Co.* 74 *b*).

Statutes in regard to set off (*Waterm. on Set Off*, § 39; also *Com.* v. *Rodes*, 5 *Mon.* 318; *Danley* v. *Whiteley*, 14 *Ark.* 687; *Borden* v. *Houston*, 2 *Tex.* 598; *Bates* v. *Republic*, 2 *Tex.* 616; *Pierce* v. *Boston*, 3 *Met.* (*Mass.*) 520; *Finnegan* v. *Fernandina*, 15 *Fla.* 379; *Lee Co.* v. *Govan*, 31 *Ark.* 610; *Newport Bridge Co.* v. *Douglass*, 12 *Bush* 673; *Cobb* v. *Elizabeth*, 75 *N. C.* 1; *Trenholm* v. *Charleston*, 3 *S. C.* 347; *White* v. *Governor*, 18 *Ala.* 767; *State* v. *Balt. & Ohio R. R. Co.*, 34 *Md.* 344; *Treasurers* v. *Cleary*, 3 *Rich.* 372; *Camden* v. *Allen*, 2 *Dutch.* 399; *Wayne* v. *Savannah*, 56 *Ga.* 448;

on account of a claim by the city that, by its charter, taxes are a lien on lands with respect to which they are imposed, superior to prior mortgages and other encumbrances thereon. For the taxes of 1875 the premises were sold by the receiver of taxes on the 21st of April, 1876, and purchased by the city for the term of fifty years, and a certificate of sale was issued and delivered to the city on the 22d of the same month, pursuant to the requirements of the charter.

Section sixty-one of the act entitled " An act to provide for a more efficient government of the city of Trenton," approved March 19th, 1874, provides that " all taxes which may be hereafter assessed upon any lands, tenements and real estate in said city, shall be and remain a lien thereon for the amount of such tax, with interest thereon, and all costs and fees, for the space of two years from the date of the tax warrant, notwithstanding any devise, descent or alienation thereof, or any judgment, mortgage or encumbrance thereon." (*P. L.* 1874, p. 331.) This section must be construed in connection with the other sections of the charter, from section sixty-one to section seventy-three inclusive. By force of these provisions of the city charter, taxes are a lien on the lands for which they are imposed, to continue for the space of two years from the date of the tax warrant, without any further steps for its enforcement. If within that period the lien is not discharged by payment,

<hr>

Att'y-Gen. v. *Cape Fear Co.*, 2 *Ired. Eq.* 444; *Hibbard* v. *Clark*, 56 *N. H.* 155; *Franciscas* v. *Reigat*, 4 *Watts* 98, 476; *Himmelman* v. *Spanagel*, 39 *Cal.* 389; see, however, *Powers* v. *Central Bank*, 18 *Ga.* 658; *Miller* v. *Franklin Bank*, 1 *Paige* 444; *State* v. *Franklin Bank*, 10 *Ohio* 91; *Com.* v. *Todd*, 9 *Bush* 708; *Wood* v. *New York*, 7 *Hun* 164, 17 *Alb. L. J.* 492; *Com.* v. *Phœnix Bank*, 11 *Met.* 129; *Johnson* v. *Howard*, 41 *Vt.* 122; *Springfield* v. *Hickox*, 7 *Ill.* 241); as to a suit by a county, see (*Cannon* v. *Gartman*, 33 *Miss.* 581); or a school-district (*McCracken* v. *Elder*, 34 *Pa. St.* 239).

So, the following statutes have been held not binding on the sovereign, because not expressly named: awarding a *venire de novo* (*Rex* v. *Franklin, Parker* 4); amendments (*Reg.* v. *Tutchen*, 1 *Salk.* 51); jeofails (*Rex* v. *Talbot*, *Cro. Car.* 311); *venire de vicineto* (*Reg.* v. *Bewdly*, 1 *Wms.* 214); putting in a double plea (*Att'y-Gen.* v. *Allgood*, *Parker* 1; *Att'y-Gen.* v. *Donaldson*, 7 *M. & W.* 422; see *State* v. *Roe*, 2 *Dutch.* 215); subjecting

Trustees of Public Schools v. City of Trenton.

and steps are regularly taken for a sale, and a certificate thereof, and a declaration of sale pursuant to the charter, the purchaser will acquire a title to the premises for the period for which they were sold, not exceeding fifty years. This lien is given priority over judgments, mortgages and encumbrances, and the title of the purchaser at a tax sale is paramount to prior judgments, mortgages and other encumbrances.

These provisions of the charter of Trenton, making taxes the first lien on the lands for which they are imposed, are common to the cities generally in this state, but they are not contained in the general tax laws of the state. By the general statute, taxes are a lien only on the estate which the owner had at the time of the assessment, and mortgages and encumbrances prior to the assessment are unaffected by the tax, or by a sale in satisfaction thereof. *Morrow* v. *Dows,* 1 *Stew.* 459.

Though the priority of taxes over mortgages and other encumbrances in the city of Trenton, and in other cities where the same policy has been adopted, exists under legislation which is special and local, such legislation was not abrogated by paragraph 12, section 8, article 4, of the constitutional amendments of 1875.

The constitutional provision referred to is in the following words : " Property shall be assessed for taxes under

*choses in action* to levy under execution, (*Divine* v. *Harvie,* 7 *Mon.* 443); liberty to file a plea of *solvit post diem* (*Rex* v. *Ellis,* 1 *Price* 23) ; release from imprisonment for fraud in debt (*Appleton* v. *Hopkins,* 5 *Gray* 530); tolls on highways (*Weymouth* v. *Nugent,* 11 *Jur.* (*N. S.*) 465, 6 *B. & S.* 22; *Westover* v. *Perkins,* 2 *El. & El.* 57 ; *Rex* v. *Cook,* 3 *T. R.* 519 ; *Att'y-Gen.* v. *Donaldson,* 10 *M. & W.* 117 ; see *Dickey* v. *Maysville Co.,* 7 *Dana* 113 ; *State* v. *Com'rs, Cheves* 210; *People* v. *Com'rs,* 48 *Barb.* 157 ; *Foster* v. *Metts,* 55 *Miss.* 77) ; or customs (*Paul* v. *Shaw,* 2 *Salk.* 617) ; bankruptcy, insolvency or assignments for creditors (*supra* 318, *et seq. notes ;* also, *Tetlow's Case, Low.* 159); nor the following terms: "Party to a suit" (*Reg.* v. *Tuchin,* 3 *Ld. Raym.* 1066 ; *State* v. *Adair,* 68 *N. C.* 69; see *Patterson* v. *Shaw,* 6 *Ind.* 377 ; *Carlisle* v. *Sheldon,* 38 *Vt.* 440); "person or corporation" (*Penn. Co.* v. *Portage Co.,* 27 *Ohio St.* 14, 21 ; *Louisville* v. *Com.,* 1 *Duv.* 295; *State* v. *Atkins,* 35 *Ga.* 315); "defendants" (*Schuyler Co.* v. *Mercer Co.,* 4 *Gilm.* 20); "plaintiff" (*State* v. *Nichols,* 39 *Miss.* 318, 320); "demand-

general laws and by uniform rules, according to its true value." This constitutional provision executed itself, and, *proprio vigore,* abrogated all inconsistent special laws for assessing property for taxes which were in existence when the amendment went into operation. *State (North Ward National Bank, pros.)* v. *City of Newark,* 10 *Vr.* 380, 11 *Id.* 558. The abrogation of such special legislation resulted from its repugnancy to the constitutional provision, and the former became repealed by the latter by implication. To what extent this constitutional provision operated to abrogate special and local legislation for the laying, levying, assessment and collection of taxes, is a matter of construction. The appropriate rules of construction have been adjudged in a series of cases (relating to the construction of statutes) of long standing. Every statute is a repeal by implication of a precedent statute, so far as the later statute is repugnant to its predecessor; the provisions of the pre-existing statute, so far as they are incompatible with a later statute, are repealed, but in other respects the original law is left in full force and effect. The old law gives way to the newer and later enactment only to the extent of the repugnancy between the two. *Bac. Abr., Statute (D); Wood* v. *United States,* 16 *Pet.* 342; *Industrial School* v. *Whitehead,* 2 *Beas.* 290; *Mechanics and Traders Bank* v. *Bridges,* 1 *Vr.*

---

ants" (*Rex* v. *Franklin, Parker* 4); " creditors " (*State* v. *Thompson,* 10 *Ark.* 61, 68; *Daniels* v. *Nelson,* 41 *Vt.* 161); condemnation of lands by statutory proceedings in eminent domain (*Jones* v. *Tatham,* 20 *Pa. St.* 398; *Com.* v. *B. & M. Co.,* 3 *Cush.* 25; *Stevens* v. *Paterson R. R. Co.,* 5 *C. E. Gr.* 126; *Penn. R. R.* v. *Long Branch R. R.,* 8 *C. E. Gr.* 157; *State* v. *Montclair,* 6 *Vr.* 328; *Indiana R. R.* v. *State,* 3 *Ind.* 421; *Davis* v. *East Tennessee R. R.,* 1 *Sneed* 94; *St. Louis R. R.* v. *Trustees,* 43 *Ill.* 303; *United States* v. *Railroad Bridge Co.,* 6 *McLean* 517; *Doe* v. *Archbishop of York,* 14 *Q. B.* 81; *Atlanta* v. *Central R. R. Co.,* 53 *Ga.* 120; *Ninth Ave. Case,* 45 *N. Y.* 729); requiring bonds to be drawn on stamped paper (*State* v. *Milburn,* 9 *Gill* 105); forbidding suits for less than $100 to be brought in the superior courts (*State* v. *Garland,* 7 *Ired.* 48; see *State* v. *Atkins,* 35 *Ga.* 315); rendering a person under sentence for felony incompetent as a witness (*State* v. *Adair,* 68 *N. C.* 69); issuing *scire facias* on a judgment (*Com.* v. *Baldwin,* 1 *Watts* 54; *Nimmo* v. *Com.,* 4 *Hen. & Munf.* 57).

Trustees of Public Schools *v.* City of Trenton.

112.   The principle on which this rule of construction rests is applicable alike to statutes and constitutional provisions. The effect of constitutional provisions and restrictions on prior legislation, and their interdict on subsequent legislatures, extends no further than to such laws as are plainly repugnant to the constitutional requirement or prohibition.

Every system of taxation consists of two parts : the one relating to the assessment (the designation of the persons and things which shall be the subjects of taxation) and the apportionment of taxation among such persons and things in the ratio prescribed by law ;  the other, the collection of the taxes assessed, by the enforced payment thereof.   Incident to both these departments of taxation, is the machinery by which the assessment shall be made, and its collection enforced.   This classification of laws relating to taxes is recognized, and was acted upon by the supreme court in *Mechanics and Traders Bank* v. *Bridges, ubi supra.*

The constitutional provision invoked relates only to the assessment of taxes, and in that respect it concerns only such equalization of the burdens of taxation as will result from the designation of the property which shall be the subjects of taxation, and the apportionment of the taxes thereon under general laws, by uniform rules and upon true valuations.   The reasons which induced the adoption of this con-

---

Statutes imposing taxes do not extend to or include the property of the sovereign (*Rex* v. *Cook,* 3 *T. R.* 519, 522; *Mersey Docks* v. *Cameron,* 11 *H. of L. Cas.* 443, 464; *Reg.* v. *McCann, L. R.* (3 *Ex. Ch.*) 677 *People* v. *Doe,* 36 *Cal.* 220; *Ryan* v. *Gallatin Co.,* 14 *Ill.* 78 ; *Buckley* v. *Osburn,* 8 *Ohio* 180, 187 ; *Nashville* v. *Bank of Tenn.,* 1 *Swan* 269 ; *Augusta* v. *Dunbar,* 50 *Ga.* 387 ; *Directors* v. *School Directors,* 42 *Pa. St.* 22 ; *People* v. *Salomon,* 51 *Ill.* 37 ; see *Louisville* v. *Com.,* 1 *Duv.* 295 ; *Lane* v. *Oregon,* 7 *Wall.* 71); or, laying assessments (*Holford* v. *Copeland,* 3 *Bos. & Pul.* 129, 140 ; *Soady* v. *Wilson,* 3 *Ad. & El.* 248 ; *Att'y-Gen.* v. *Donaldson,* 10 *M. & W.* 117 ; *Williams* v. *Gravel Road Co., Wils.* (*Ind.*) 7 ; *Rex* v. *Mathews, Cald.* 1 ; *Reg.* v. *Ponsonby,* 3 *Q. B.* 13 ; *Darlington* v. *New York,* 31 *N. Y.* 164 ; *Chicago* v. *Hasley,* 25 *Ill.* 595 ; *Fagan* v. *Chicago,* 84 *Ill.* 227 ; *Netherton* v. *Ward,* 3 *B. & Ald.* 21 ; see *Whiteley* v. *Fawsett, Styles* 12).

The following are ratable: A keeper of a royal park, who gives his services as rent for a lodge therein, which he occupies (*Rex* v. *Mathews, Cald.* 1 ; *Lord Bute* v. *Grindall,* 1 *T. R.* 338, 2 *H. Bl.* 265) ; the owner of

44

stitutional provision are deep-seated in principles of public policy. Its object was to secure to the people of the state the equalization of taxation, so far as was practicable, by requiring the imposition of taxes on property by general laws, on the principle of uniformity in the subjects of taxation and in valuations. Whether taxes shall be assessed by an officer elected by the people, and called an assessor, or by a commissioner appointed by a municipal body— whether they shall be collected by an elected officer called a collector of taxes, or by a receiver, holding his office by virtue of some other authority, and payment thereof enforced by a tax warrant leviable on goods and chattels, or on the person, or by a lien upon and sale of property, real or personal, are matters of little importance, which the framers of the constitutional amendments wisely left to legislative discretion. Statutes regulating these subjects in force when the constitutional amendments were adopted, though local and special, were not abrogated, nor is such legislation in the future interdicted by this amendment. How far and within what limits future legislation of this character, considered as special and local legislation, may be controlled by the other constitutional amendments, has not been considered.

Having reached the conclusion that in the city of Trenton, as a general rule, taxes are a lien paramount to prior mort-

---

premises rented by the crown (*Eckersall* v. *Briggs*, 4 *T. R.* 6); the pipes of a water company, laid through royal demesnes (*Rex* v. *Chelsea*, 5 *Barn. & Adol.* 156); the present interest of a land owner, where the state is entitled to the reversion (*Bridge Prop'rs* v. *State*, 1 *Zab.* 384, 2 *Zab.* 593; *Fall* v. *Marysville*, 15 *Cal.* 391; see *Ryan* v. *Gallatin Co.*, 14 *Ill.* 78); lands leased by the state to a corporation (*State* v. *Haight*, 7 *Vr.* 471; see *Buckingham* v. *Reeve*, 19 *Ohio* 399). State bonds may be taxed (*People* v. *Home Ins. Co.*, 29 *Cal.* 533; *Webb* v. *Burlington*, 28 *Vt.* 188; see *People* v. *New England Ins. Co.*, 26 *N. Y.* 303); but not by a city (*Augusta* v. *Dunbar*, 50 *Ga.* 387); or city bonds (*State* v. *Woodruff*, 8 *Vr.* 139; *British Com. Ins. Co.* v. *Com'r*, 18 *Abb. Pr.* 118, 1 *Keyes* 303); but not by a city (*Murray* v. *Charleston*, 96 *U. S.* 342.)

Independently of any statutory or constitutional provision, the property of the sovereign is exempt from taxation.

Trustees of Public Schools v. City of Trenton.

gages and other encumbrances on the lands with respect to which the taxes were laid, the inquiry arises, whether the two mortgages involved in this case are subordinated to such priority of lien.

The general doctrine of the law is, that liens take precedence in the order of priority in date. The power of the legislature, in virtue of its sovereignty, to make taxes a lien upon the estate of all parties interested in the land, and to make the tax title paramount to all other and prior claims and encumbrances, is not denied. *Hopper* v. *Malleson*, 1 *C. E. Gr.* 386, *per Green, C.* ; *Morrow* v. *Dows*, 1 *Stew.* 463, *per Van Syckel, J.*; *Campbell* v. *Howland*, 5 *C. E. Gr.* 186; *Parker* v. *Baxter*, 2 *Gray* 185 ; *Dale* v. *McEvers*, 2 *Cow.* 118. The displacement of prior encumbrances, prejudicial to individual rights, can only be effected by the exercise of the sovereign power of taxation. It may be, and frequently is, the occasion of injustice, and therefore will not be presumed in the absence of a clear expression of legislative intent. In the city of Trenton, as we have seen, such priority is given by statutory provisions contained in its charter. Can these statutory enactments be permitted, under the ordinary rules of construction, to affect the mortgages now in question ?

The mortgage of the complainants was given to secure an investment of funds set apart for the support of public schools. By the constitution, the fund for the support of

---

This includes, among others, the following: unoccupied lands (*Dixon* v. *Porter*, 23 *Miss.* 84) ; lands dedicated for streets, even before acceptance (*Plumstead Board* v. *British Land Co.*, L. R. (10 Q. B.) 203 ; see *State* v. *Hudson*, 5 *Vr.* 25, 531 ; *Ellsworth* v. *Grand Rapids*, 27 *Mich.* 250) ; a post-office (*Smith* v. *Birmingham*, 7 *El. & Bl.* 483) ; royal palaces (*Att'y-Gen.* v. *Donaldson*, 10 *M. & W.* 117) ; but occupiers by permission are ratable (*Reg.* v. *Ponsonby*, 3 *Ad. & El.* 14) ; the horse guards (*Amherst* v. *Somers*, 3 *T. R.* 372 ; see *Eckersall* v. *Briggs*, 4 *T. R.* 6 ; *Rex* v. *Hendis*, 3 *T. R.* 497 ; *Rex* v. *Terrott*, 3 *East* 506) ; the invalid office (*Peyton's Case*, *Leach's Cr. Cas.* 300) ; the inns of court (*Leus* v. *Brown*, 1 *Car. & P.* 224 ; *Rex* v. *Butterworth*, 2 *Car. & P.* 391 ; see *Moss* v. *London*, 4 *El. & Bl.* 670) ; the admiralty (*Reg.* v. *Stewart*, 8 *El. & Bl.* 360) ; the local police (*Lancashire* v. *Strelford*, *El. Bl. & El.* 225) ; county court buildings (*Hodgson* v. *Carlisle*, 8 *El. & Bl.* 116 ; *Reg.* v. *Castle View*, L. R. (2 Q. B.) 493 ; *Reg.* v. *Manchester*, 3 *El. & Bl.* 336 ; *Lancashire* v. *Cheetham, L.*

free schools, and all money, stock and other property appropriated for that purpose, or received into the treasury to augment the said fund, is required to be securely invested, and to remain a perpetual fund; and the income thereof, except so much as it may be judged expedient to apply to an increase of the capital, is required to be annually appropriated to the support of free schools; and it is declared that it shall not be competent for the legislature to borrow, appropriate or use the said fund, or any part thereof, for any other purpose, under any pretence whatever. (*Constitution* p. 6, *Section* 7, *Article IV*).

The discussion of this case has been had upon broader grounds, and aside from this constitutional provision, with the view of obtaining the opinion of this court as to the effect of the priority of taxes under statutes upon securities in which the funds of the state generally are invested; and that question is directly involved in this case, in considering the claim of the city to priority over the mortgage given to the chancellor. The case will therefore be examined exclusively on that ground. The constitutional protection of the school fund is referred to, that no inference may be drawn from this opinion that the legislature has the capacity to impair the integrity of that fund, or the produce of its investments, by methods which are, direct or indirect,

---

*R.* (3 *Q. B.*) 14; *Reg.* v. *Worcestershire,* 11 *Ad. & El.* 57; *Tracey* v. *Taylor,* 3 *Q. B.* 956); or masters in chancery as occupiers (*Holford* v. *Copeland,* 3 *Bos. & Pul.* 129); or a jail (*Reg.* v. *Shepherd,* 1 *Q. B.* 170; *Bedfordshire* v. *Church-wardens,* 7 *Exch.* 650); the king's dock-yards (*Att'y-Gen.* v. *Hill,* 2 *M. & W.* 160); any public occupier of docks (*Reg.* v. *Liverpool,* 9 *Ad. & El.* 435; *Rex* v. *Beverly,* 6 *Ad. & El.* 645; *Reg.* v. *St. George,* 10 *Q. B.* 852; see *Rex* v. *Liverpool,* 7 *Barn. & Cress.* 61; *Mersey Docks* v. *Cameron,* 11 *H. of L. Cas.* 443); a prison (*Gambier* v. *Lyford,* 3 *El. & Bl.* 346); a museum built on crown lands (*Beche* v. *St. James,* 4 *El. & Bl.* 385); municipal lands, although without the city bounds (*Reg.* v. *Exminster,* 12 *Ad. & El.* 2; see *Reg.* v. *Oldham, L. R.* (3 *Q. B.*) 474); or used as a commons (*Lincoln* v. *Holmes Common, L. R.* (2 *Q. B.*) 482; see *Rex* v. *York,* 6 *Ad. & El.* 419; *Rex* v. *Alnwick,* 9 *Ad. & El.* 444; *St. Louis* v. *Gorman,* 29 *Mo.* 593); a bridge belonging wholly to the crown (*Reg.* v. *McCann, L. R.* (3 *Q. B.*) 677); stone for the use of the government (*Weymouth* v. *Nugent,* 6 *B. & S.* 22; see *Andrews* v. *Auditor,* 28 *Gratt.* 115;

either under the powers of taxation or by any other means whatever.

The immunity of the property of the state, and of its political subdivisions, from taxation, does not result from a want of power in the legislature to subject such property to taxation. The state may, if it sees fit, subject its property, and the property owned by its municipal divisions, to taxation, in common with other property within its territory. But inasmuch as taxation of public property would necessarily involve other taxation for the payment of the taxes so laid, and thus the public would be taxing itself in order to raise money to pay over to itself, the inference of law is that the general language of statutes prescribing the property which shall be taxable, is not applicable to the property of the state or its municipalities. Such property is, therefore, by implication, excluded from the operation of laws imposing taxation, unless there is a clear expression of intent to include it. *Cooley on Taxation* 131. Hence crown lands, and the property of the state, or its political sub-divisions, are not taxable under general statutes providing for taxation. *Att'y-Gen.* v. *Morris*, 2 *M. & W.* 159; *Mersey Docks* v. *Cameron*, 11 *H. of L. Cas.* 443; *Inhabitants &c.* v. *County Com'rs*, 4 *Gray* 500; *Worcester County* v. *Worcester*, 116 *Mass.* 193; *State* v. *Gaffney*, 5 *Vr.* 131. Under the general

*Reg.* v. *Hall*, 4 *El. & Bl.* 29); salaries of state judges (*Com.* v. *Mann*, 5 *Watts & Serg.* 403; *New Orleans* v. *Lea*, 14 *La. An.* 197; see *Gilkeson* v. *Frederick*, 13 *Gratt.* 577); or, of a prothonotary (*City Council* v. *Lee*, 3 *Brev.* 226; see *Cohen* v. *Com.* 6 *Pa. St.* 111); public school-houses (*Gerke* v. *Purcell*, 25 *Ohio St.* 229; *Ward* v. *Manchester*, 56 *N. H.* 508; *Curtis* v. *Whipple*, 24 *Wis.* 350); lands held by a city in trust for public schools of the state (*Chicago* v. *People*, 80 *Ill.* 384); state universities (*Trustees* v. *Champaign Co.*, 76 *Ill.* 184); lands forfeited to or bid in by the state for non-payment of taxes (*Buckley* v. *Osburn*, 8 *Ohio* 180, 187; see *Tipton Co.* v. *State*, 24 *Ind.* 255; *Gould* v. *Day*, 94 *U. S.* 405); a city cemetery (*People* v. *Doe*, 36 *Cal.* 220; see *Louisville* v. *Nevin*, 10 *Bush* 549; *Baltimore* v. *Greenmount Cemetery*, 7 *Md.* 517; *Woodlawn Cemetery* v. *Everett*, 118 *Mass.* 354); a corporation belonging wholly to the state (*Nashville* v. *Bank of Tenn.*, 1 *Swan* 269; *Bank* v. *New Albany*, 11 *Ind.* 139; *Georgia* v. *Atkins*, 35 *Ga.* 315; see *Veazie Bank* v. *Fenno*, 8 *Wall.* 533; *State* v. *Bank of Newbern*, 1 *Dev. & Bat. Eq.* 216); a state asylum for lunatics

Trustees of Public Schools *v.* City of Trenton.

tax law of this state, public property, whether belonging to the state or its subordinate political divisions, such as counties, cities, towns and townships, is not liable to taxation. The city of Trenton had no power to levy a tax directly upon the mortgage of the complainants, though mortgages are expressly included in the enumeration of property liable to taxation. From the fact that the property of the state is, by implication, excepted from that part of the tax laws which prescribes the subjects of taxation, it follows logically, as a necessary sequence, that its property is not included in or affected by the other provisions of the law, which provide a mode for the collection of the taxes.

The complainants' mortgage was executed and delivered in 1861. The earliest of the annual taxes remaining unpaid occurred in 1875. It is not necessary to discuss the extent to which the common law prerogatives of the crown have been succeeded to by the state. In some respects the state is not endued with the prerogatives of the king. Where the state goes into the market for the investment of money, it takes its securities subject to the vested rights of property of private individuals. This must necessarily be so under a government which protects private property against the state by constitutional prohibitions. Consequently, a mortgage given to the state or its representatives for public moneys

(*Williams* v. *Little White Lick Co.,* 1 *Wils.* (*Ind.*) 7); county lands (*Gibson* v. *Howe,* 37 *Iowa* 168; see *Townsen* v. *Wilson,* 9 *Pa. St.* 270; *Moore* v. *Morledge,* 42 *Iowa* 26); a county poor-house (*Phila.* v. *Amer. Philosoph. Soc.,* 42 *Pa. St.* 21); or court-house or jail (*Worcester Co.* v. *Worcester,* 116 *Mass.* 193; *Piper* v. *Singer,* 4 *Serg. & Rawle,* 354); state or city parks (*Doyle* v. *Austin,* 47 *Cal.* 353; *People* v. *Salomon,* 51 *Ill.* 37, 52); a city hall (*Louisville* v. *Com.,* 1 *Duv.* 295); or reservoir (*State* v. *Gaffney,* 5 *Vr.* 133); or wharf (*Low* v. *Lewis,* 46 *Cal.* 549); churches from which no profit is made (*Rex* v. *Woodward,* 5 *T. R.* 79; *Rex* v. *Agar,* 14 *East* 255 *State* v. *Jersey City,* 4 *Zab.* 108, 120).

How far a state, by becoming interested as a stockholder or part owner of a corporation, divests herself of sovereignty, see (*Freeholders of Middlesex* v. *State Bank, supra,* p. 317, *note;* also, *State* v. *Great Miami Co.,* 14 *Ohio* 405; *Bank of U. S.* v. *McKenzie,* 2 *Brock.* 393; *State* v. *Central Co.,* 10 *Humph.* 388; *Dobbins* v. *Orange R. R.,* 37 *Ga.* 240; *Att'y-Gen.* v. *Bank of Cape Fear,* 5 *Ired. Eq.* 71; *Ernst* v. *Ernst,* Breese 316; *Biscoe* v.

Trustees of Public Schools v. City of Trenton.

invested, will be subject to all prior estates in the mortgaged premises, and all liens and encumbrances thereon actually vested antecedently in private individuals. The complainants do not rely on the prerogative right of the state to a preference of debts due to it over debts or liabilities accruing to others. Their mortgage, by the ordinary rules of law, is such a common law conveyance as, between private citizens, would create a lien having relation to the time of its execution and delivery. The priority thus acquired by the complainant, the city endeavors to displace by force of the provisions of its charter. The complainants deny that these provisions of the city charter are applicable to the state.

The common law doctrine is, that where the king has any prerogative, right, title or interest, and the statute is general, he shall not be barred of them by the general words of the act, for the king shall not be bound unless the statute is made by express words to extend to him. *Magdalen College Case*, 11 *Co.* 74; *Plowden* 239; *Bac. Abr., Statutes (E.)* Independently of any doctrine founded on the notion of prerogative, the same construction ought to prevail, founded upon the legislative intent. Where the government is not expressly, or by necessary implication, included, it ought to be clear, from the nature of the mischiefs to be reached,

---

*Coulter*, 18 *Ark.* 423; *Bank of Ky.* v. *Wister*, 2 *Pet.* 318; *U. S. Bank* v. *Planters Bank*, 8 *Wheat.* 904; *Bank* v. *Gibbs*, 3 *McCord* 377; *Nashville* v. *Bank of Tenn.*, 1 *Swan* 269; *Dyer* v. *Bank of Mobile*, 14 *Ala.* 622; *Bank of Ind.* v. *New Albany*, 11 *Ind.* 139; *State* v. *Atkins*, 35 *Ga.* 315; *Micrs* v. *Zanesville Co.*, 11 *Ohio* 273; *Curran* v. *Arkansas*, 15 *How.* 304; *Morrel* v. *Bank of Pa.*, 5 *Phila.* 61).

The immunity of a state does not extend to an individual to whom the state has transferred the lands, etc., which were exempted (*Penn. R. R.* v. *Duquesne*, 46 *Pa. St.* 223; *Trustees* v. *Chicago*, 12 *Ill.* 403; *New Haven* v. *Sheffield*, 30 *Conn.* 160; *Paul* v. *Shaw*, 2 *Salk.* 167; *Colchester* v. *Kewney*, 4 *H. & C.* 445, *L. R.* (1 *Exch.*) 308; *Reg.* v. *Wallingford*, 10 *Ad. & El.* 259; see *All Souls* v. *Costar*, 3 *Bos. & Pul.* 635; *Todd* v. *London Railway*, 7 *Man. & Gr.* 366; *Del. Division* v. *McKeen*, 49 *Pa. St.* 424, 52 *Pa. St.* 117).

If the state be named, of course it is bound (*Straus* v. *Com.*, 1 *Duv.* 149; *State* v. *Crutcher*, 2 *Swan* 504, 510; *Piper* v. *Richardson*, 9 *Metc.* 155; *Soady* v. *Wilson*, 3 *Ad. & El.* 240; *Netherton* v. *Ward*, 3 *Barn. & Ald.* 21).

or the language used, that the government itself was in contemplation of the legislature, before a court of law would be authorized to put a construction on a statute which would affect its rights. *United States* v. *Hoar,* 2 *Mason* 314. The statute of limitations, which most effectually puts an end to and determines the rights of private individuals, by lapse of time, will be inoperative as against the crown or the state suing for the enforcement of its rights in property, unless it be specially named therein. *Lambert* v. *Taylor,* 4 *B. & C.* 138 ; *United States* v. *Buford,* 3 *Pet.* 12 ; *United States* v. *Hoar,* 2 *Mason* 314 ; *People* v. *Gilbert,* 18 *Johns.* 227. A discharge under the bankrupt or insolvent laws will not release the debtor from any of his obligations for debts due to the crown or to the state, for the reason that the public is not bound by statutes of this kind, unless expressly mentioned. *Anon.,* 1 *Atk.* 262 ; *United States* v. *Nelson,* 8 *Wheat.* 253 ; *Glenn* v. *Humphreys,* 4 *Wash. C. C.* 424 ; *People* v. *Rosseter,* 4 *Cow.* 143.

The rule of construction above mentioned was adopted and enforced in this state in *Den* v. *O'Hanlon, Spen.* 31, *S. C. on error,* 1 *Zab.* 582, under circumstances which give that case the force of a direct precedent on the subject now under consideration. John G. Leake died in 1827, intestate, seized of lands in the county of Bergen, and without heirs

A municipality having no other powers than those conferred by its charter or the laws of the state, can impose taxes in no other manner (*Daily* v. *Swope,* 47 *Miss.* 367 ; *Kinsey* v. *Pulaski Co.,* 2 *Dill.* 253, 255, note ; *Augusta* v. *Nat. Bank,* 47 *Ga.* 562 ; *Nashville* v. *Bank of Tenn.,* 1 *Swan* 269 ; *Augusta* v. *Dunbar,* 50 *Ga.* 387 ; *Pullen* v. *Raleigh,* 68 *N. C.* 451). Although the imposition of or exemption from a state tax does not necessarily affect a local one (*State* v. *Robertson,* 4 *Zab.* 504 ; *Home Ins. Co.* v. *Augusta,* 93 *U. S.* 116 ; *Wiggins* v. *Chicago,* 68 *Ill.* 372 ; *Morgan* v. *Crez,* 46 *Vt.* 773 ; *Coulson* v. *Harris,* 43 *Miss.* 728 ; *Orange R. R.* v. *Alexandria,* 17 *Gratt.* 176 ; *Gordon* v. *Baltimore,* 5 *Gill* 231 ; *Richmond* v. *Richmond & Danville R. R.,* 21 *Gratt.* 604 ; *State* v. *Elizabeth,* 8 *Vr.* 330 ; *Mayor of New York,* 11 *Johns.* 77 ; *Martin* v. *Charleston,* 13 *Rich. Eq.* 50) ; unless expressly so provided by statute (*C. & A. R. R.* v. *Hillegas,* 3 *Harr.* 11 ; *Gardner* v. *State,* 1 *Zab.* 577 ; *State* v. *Bently,* 3 *Zab.* 532 ; *State* v. *Mansfield,* 3 *Zab.* 510 ; *Bank* v. *Edwards,* 5 *Ired.* 516 ; *State Bank* v. *Charleston,* 3 *Rich.* 342 ; *Tax Cases,* 12 *Gill & Johns.* 117 ; *State* v. *Haight,* 5 *Vr.* 319 ; *Evansville* v. *Hall,* 14 *Ind.* 27).

Trustees of Public Schools v. City of Trenton.

capable of inheriting the same  By reason of his death intestate and without heirs capable of inheriting, the lands escheated to the state.   In 1832 an inquisition was taken by the state, pursuant to the act concerning escheats.   *Elm. Dig.* 162.   In 1834 the orphans court of the county of Bergen made an order for the sale of lands for the payment of the debts of the deceased, pursuant to several acts of the legislature passed in 1799, 1825 and 1837, which empowered the orphans court to order the sale of lands of decedents for the payment of debts.   The plaintiff made title under a purchase at such sale.   The question for decision was, whether the orphans court had jurisdiction to order the sale.   The title of the state accrued at the death of Leake, in 1827; the sale was ordered by the orphans court, under a statute in force before the title of the state accrued; and yet, the supreme court and this court disaffirmed the title of the purchaser, for the reason that in the general words of the statute was not included the power to sell land escheated to the state, and to divest the title of the state.

Speaking of the common law rule of construction, that the sovereign power is not restrained of a previous right by the general words of a statute, Justice Carpenter, in this court, said:   "It is a rule which has been adopted and

A state cannot authorize a city to assess a tax which she herself could not assess (*O'Donnell* v. *Bailey,* 24 *Miss.* 386); nor can a city exempt any property from taxation (*Mack* v. *Jones,* 1 *Fost.* 393 ; *Brewer Co.* v. *Brewer,* 62 *Me.* 62 ; *Cooley on Tax.* 152).

As to the nature of county taxes, see (*State* v. *St. Louis,* 34 *Mo.* 546; *Woodburn* v. *Farmers Bank,* 5 *Watts & Serg.* 447, 450).

Whether money paid into court is taxable, see (*Kellinger's Case,* 9 *Paige* 62 ; *People* v. *Lardner,* 30 *Cal.* 242 ; *Com'rs* v. *Clarke,* 36 *Md.* 206); or, in a receiver's hands, (*Hewitt* v. *New York & O. R. R.,* 12 *Blatch.* 452, 13 *Blatch.* 104 ; 2 *Cent. L. J.* 601 ; 3 *Cent. L. J.* 715) ; or, held by an assignee in bankruptcy (*Mitchell's Case,* 17 *Alb. L. J.* 26 ; *Booth's Case,* 14 *Nat. Bk. Reg.* 332 ; *County of Yuba* v. *Adams,* 7 *Cal.* 35).

In several states special statutes for the protection of school or sinking funds, including exemption from taxation, exist—see (*Lowry* v. *Francis,* 2 *Yerg.* 534; *Crum* v. *Cotting,* 22 *Iowa* 411 ; *Miller* v. *Gregg,* 26 *Iowa* 75 ; *State* v. *Shaw,* 28 *Iowa* 67 ; *Hamilton* v *State,* 1 *Ind.* 128 ; *Tipton Co.* v. *State,* 24 *Ind.* 255 ; *Chicago* v. *Miller,* 80 *Ill.* 384).—REP.

recognized in this country as applicable to our institutions; it is a rule not founded on royal prerogative, but on principles of public policy, that the state should not suffer from the negligence of its officers and servants.  *   *   * The reasons for applying the maxim in a representative government, where the people act only through the delegated power of their agents, is equally cogent as in a kingly government; the rule stands on the same ground of expediency and public conveniency." 1 *Zab.* 558.

Considerations of public policy of the greatest weight require the application of this rule of construction in the case now in hand. The moneys represented by the complainants' mortgage are not a legitimate subject of taxation by the city, for the reason that they are the property of the state, and, by implication, are excluded from the class of property over which the city's power of taxation extends. The sections of the city charter preferring its lien for taxes over prior mortgages and other encumbrances, are simply adjuncts to its powers of taxation. As statutes on the same subject, or parts of the same statute relating to one subject, they are *in pari materia*, and should receive the same construction. If the securities of the state are subject to this priority of lien, their value is liable to be destroyed by the failure of its agents, through neglect or inadvertence, to make redemption of the premises from sale and conveyance, by the payment of the taxes; and without a legislative appropriation, no funds would be provided for that purpose. It is not to be supposed that the legislature intended to make the investments of the school fund and the sinking fund precarious, by subjecting them to the liability of being swept away by the summary process of 'tax sales.

The mortgage to the chancellor is entitled to stand in the same position. It was executed and delivered in 1867, long before any of these taxes were assessed. It represents property which the state, in virtue of its sovereignty, has drawn into its courts, and is invested in the name of the chancellor, as its selected agency for the investment thereof.

Trustees of Public Schools *v.* City of Trenton.

These investments are generally made for long periods of time, and are frequently for the ultimate benefit of persons not *in esse.* It is not within the official duty of the chancellor to see that the taxes on the mortgaged premises are not permitted by the mortgagor to fall in arrear; and no officer of the state is charged with the duty of oversight over the subject. The same considerations of public policy, founded on expediency, which protect investments of the funds of the state from the hazards of the priority of tax liens, apply with equal force to these investments, and induce a similar construction of the tax laws as applicable to these securities.

The decree appealed from should be affirmed.

Dixon, J.

I concur in the opinion of the court in this cause, except so far as it accords to the " chancellor's mortgage " priority over the tax. The reason for conceding such priority to the mortgage of the school trustees is, that that is the property of the state, and the provision of the city charter constituting taxes a lien upon land superior to mortgages, does not relate to a mortgage of the state, because there are not express words or necessary implication to that effect. Indeed, it would be strange if the state should authorize its agents to impair one of its pecuniary claims in order to strengthen another no more valuable. But this reason seems to me wholly inapplicable to the " chancellor's mortgage." I can regard that only as private property. It secures a bond conditioned for the payment of the interest of $5,413.33 to Elizabeth Howell during her life, and of that principal sum to J. L. H., C. M. H., F. H. and L. H., in equal shares, on the death of Elizabeth. No part of the value represented by the bond is now in the keeping of the chancellor or his officers, nor will it, according to the terms of the condition, ever get there. It is to pass from private hand to private hand for private use. That the chancellor is the nominal obligee is purely formal, not in the least affecting the right of property.

Trustees of Public Schools *v.* City of Trenton.

In *State* v. *Hansom*, 7 *Vr.* 50, the supreme court held, in the case of a bond just like this, that the payee of the interest could be legally taxed for the interest which had accrued on the bond up to the time of the assessment, a distinct recognition of the fact that such debts are private property within the purview of our tax laws.

The *Kellinger Case*, 9 *Paige* 61, which is the only authority cited for the notion that such property as this is not taxable, while it decides, very properly, that the court of chancery and its officers cannot be assessed for funds there deposited, clearly implies that the suitors who own those funds can be taxed therefor as for any other personal estate. Chancellor Walworth says: " If the court of chancery, or its officers, can be taxed as the trustee of the fund in the sixth ward of the city of New York, suitors residing elsewhere must either pay a double tax upon their interests in the fund, or the town or ward where such suitors reside will be deprived of the right to tax them anything on account of that portion of their personal estate.  *  *  *  If any part of the fund in court belongs to persons residing in the city of New York, *so as to render it proper that the same should be taxed in that city,* the true course is to assess the same to such owner in the ward in which he resides, as a part of his personal estate."

The doctrine that private property, in the custody or under the management or control of the courts for the benefit or protection of the owners, is, therefore, to be relieved from the burdens of government, seems to me to lead to results utterly inadmissible.

For affirmance—BEASLEY, C. J., DALRIMPLE, DEPUE, KNAPP, REED, SCUDDER, WOODHULL, CLEMENT, DODD, GREEN, LATHROP—11.

For reversal—DIXON—1.